NATHAN F. SMITH, #264635
MALCOLM ♦ CISNEROS, A Law Corporation
2112 Business Center Drive
Irvine, California 92612
Phone: (949) 252-9400
Fax:     (949) 252-1032
Email: nathan@mclaw.org

*Attorneys for Cenlar FSB, servicer for Citibank, N.A.*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>ORDELL ELIZABETH MOON,<br><br>               Debtor. | Bankruptcy Case No. 23-10092<br><br>Chapter 13<br><br>**RESPONSE TO FIRST AMENDED OBJECTION TO PROOF OF CLAIM OF CITIBANK N.A.**<br><br>**HEARING DATE:**<br>DATE: July 12, 2023<br>TIME: 10:15 AM<br>CTRM: Zoom Webinar |

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT JUDGE, DEBTOR, THE CHAPTER 13 TRUSTEE, AND OTHER INTERESTED PARTIES:**

      Cenlar FSB, servicer for Citibank, N.A. ("Citibank"), hereby responds to Debtor's "First Amended Objection to Proof of Claim of Citibank N.A. for Cause" ("Objection") as follows.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.

## **INTRODUCTION**

Debtor, through "Don Shannon, AR by POA," contends that Citibank's deed of trust against the real property commonly known as 1905 Bristol St, Petaluma, California 94954 ("Property") has been "discharged" under California Civil Code ("CC") § 1700 because the promissory note that it secures bears an endorsement in blank. However, CC § 1700, which concerns materially alterations of written contracts is inapposite, because the endorsement of a promissory note is not a material alteration and is specifically authorized by the California Commercial Code. Additionally, the Objection references several criminal statutes, none of which are applicable in the context of an objection to claim and requests the imposition of sanctions. However, Debtor's request is procedurally improper, and, in any event, she has failed to comply with the requisite steps necessary to seek sanctions. Based on the foregoing, and as explained in further detail below, Debtor's objection must be overruled, and her request for sanctions must be denied.

## II.

## **STATEMENT OF FACTS**

1. On August 25, 2005, Lloyd Moon and Ordell Moon ("Debtor") executed a Home Equity Line of Credit Agreement and Disclosure with a credit limit in the amount of $30,000 ("Note"). The Note is secured against the Property by a deed of trust ("Deed of Trust"). True and correct copies of the Note and Deed of Trust are attached hereto as Exhibits "**1**" and "**2**."

2. The Note identifies Citibank as the lender, and the Deed of Trust identifies Citibank as the beneficiary.

3. The Note bears an endorsement in blank by Citibank. *See* Exhibit "**1**."

4. On April 4, 2023, Citibank filed a proof of claim in the amount of $250,225.72 ("Claim"). The Claim reflects pre-petition arrears of $77,223.83. A true and correct copy of the Claim is attached hereto as Exhibit "**3**."

5. On May 15, 2023, Debtor filed the Objection.

///

///

# III.

## ARGUMENT

### A.    The Legal Standard for a Proof of Claim.

Under Fed. R. Bankr. P. 3001(f), a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim. To overcome the presumption of validity created by a timely-filed proof of claim, an objecting party must do one of the following: (1) object based on legal grounds and provide a memorandum of points and authorities setting forth the legal basis for the objection; or (2) object based on a factual ground and provide sufficient evidence (usually in the form of declarations under penalty of perjury) to create triable issues of fact. *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1280 (9th Cir. BAP 2000); *United States v. Offord Finance, Inc. (In re Medina)*, 205 B.R. 216, 222 (9th Cir. BAP 1996); *Hemingway Transport, Inc. v. Kahn (In re Hemingway Transport, Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993).

An objecting party bears the burden and must "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991).  When the objector has shown enough evidence to negate one or more facts in the proof of claim, the burden shifts back to the claimant to prove the validity of the claim by a preponderance of evidence. *See Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000).

### B.    Debtor's Objection Must be Overruled.

#### 1.    The Objection Lacks a Legal Basis.

Debtor contends that CC § 1700, which provides that "[t]he intentional destruction, cancellation, or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act."

California Commercial Code § 3204(a) provides that:

" 'Indorsement' means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the

purpose of (1) negotiating the instrument, (2) restricting payment of the instrument, or (3) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."

California Commercial Code § 3205 provides that:

"(a) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. The principles stated in Section 3110 apply to special indorsements.
(b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."

Here, the Note was not destroyed, cancelled, or materially altered. Rather, it was endorsed in blank by Citibank, an act that is specifically authorized by the California Commercial Code. Therefore CC § 1700 is inapposite, and, because the Objection is exclusively premised on CC § 1700, it must be overruled.

### 2. The Objection Lacks a Factual Basis.

The Objection lacks any evidentiary support whatsoever, whether in the form of declarations or exhibits. Therefore, it lacks a factual basis and must be overruled.

### C. Debtor's Request for Sanctions is Baseless and Procedurally Improper.

Debtor's request for sanctions based on inapplicable criminal statutes in the context of an objection to claim is procedurally improper, baseless, and must be denied. To the extent that Debtor desires to seek the imposition of sanctions, she must comply with *inter alia* Federal Rule of Bankruptcy Procedure 9011. However, her request in the context of an objection to claim is procedurally improper and must be denied.

///

Response to First Amended Objection to Proof of Claim                4

## IV.

## CONCLUSION

Based upon the foregoing, Citibank respectfully request that the Court overrule the Objection and deny Debtor's request for sanctions.

Dated: June 27, 2023

Respectfully Submitted,

MALCOLM ♦ CISNEROS, A Law Corporation

By: */s/ Nathan F. Smith*

NATHAN F. SMITH
*Attorneys for Cenlar FSB, servicer for Citibank, N.A.*

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA )
                             ) ss.
COUNTY OF ORANGE )

       I am employed in the County of Orange, State of California. I am over the age of eighteen and not a party to the within action; my business address is: 2112 Business Center Drive, Irvine, California, 92612.

       On June 27, 2023, I served the following document described as **RESPONSE TO FIRST AMENDED OBJECTION TO PROOF OF CLAIM OF CITIBANK N.A.** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Irvine, California **(and via telecopy or overnight mail where indicated)**, addressed as follows:

                                    **DEBTOR:**
                                    Ordell Elizabeth Moon
                                    1905 Bristol St.
                                    Petaluma, CA 94954

                                    **DEBTOR ATTORNEY:**
                                    Pro Se

                                    **TRUSTEE:**
                                      David Burchard
                                    P.O. Box 8059
                                    Foster City, CA 944043

I declare under penalty of perjury that the foregoing is true and correct.
Executed on June 27, 2023, at Irvine, California.

                                    */s/Diep Quach*
                                    Diep Quach

EXHIBIT "1"



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

Borrower(s): **LLOYD MOON and ORDELL MOON**

Property Address: **1905 BRISTOL ST, PETALUMA, CA 94954 (the "Property")**

| | |
|---|---|
| **Credit Limit:** | **$300,000.00** |
| **Index:** | **6.500%** |
| **Initial Margin (if applicable):** | **Not Applicable** |
| **Initial Daily Periodic Rate (if applicable):** | **Not Applicable** |
| **Initial ANNUAL PERCENTAGE RATE (if applicable):** (The Initial Annual Percentage Rate will vary as the Index varies) | **Not Applicable** |
| **Date the Initial Margin Ends and Regular Margin Begins (if applicable):** | **Not Applicable** |
| **Regular Margin:** | **-0.150%** |
| **Regular Daily Periodic Rate:** | **0.017397%** |
| **Regular ANNUAL PERCENTAGE RATE:** (The Regular Annual Percentage Rate will vary as the Index varies) | **6.350%** (Index +/- the Regular Margin) |

| | | | |
|---|---|---|---|
| **Mortgage Broker Fee (Finance Charge) Paid by Borrower:** | **$275.00** | **Mortgage Broker Fee Paid by Lender:** | **$1,250.00** |

### Borrower Charges Paid Outside of Closing (Finance Charge)

| | | | |
|---|---|---|---|
| **Broker - Processing Fee:** | $0.00 | **Broker - Origination Fee:** | $0.00 |
| **Broker - Courier / Freight / Postage:** | $0.00 | **Broker - Appraisal Fee:** | $0.00 |
| **Broker - Application Fee:** | $0.00 | **Broker - Credit Report Fee:** | $0.00 |
| **Broker - Administration Fee:** | $0.00 | **Broker - Other:** | $0.00 |

### Closing Costs, Paid by Citibank*

| | | | |
|---|---|---|---|
| **Appraisal Fee:** | $0.00 | **Recording Fees:** Sonoma County Recorder | $31.00 |
| **Credit Report Fee:** | $2.00 | **City/County Tax/Stamps:** | $0.00 |
| **Flood Certification Fee (Finance Charge):** | $4.25 | **State Tax/Stamps:** | $0.00 |
| **Settlement or Closing Fee (Finance Charge):** NASCO | $350.00 | **Intangible Tax:** | $0.00 |
| **Abstract or Title Search Fee:** NASCO | $125.00 | **Document Stamp Tax:** | $0.00 |
| **Title Examination Fee:** | $0.00 | **Mortgage Registration Tax:** | $0.00 |
| **Title Insurance Binder:** | $0.00 | **Tax Certificate Fee:** | $0.00 |
| **Document Preparation:** | $0.00 | **Mortgage Taxes: Borrower Portion** | $0.00 |
| **Overnight/Postage Fee (Finance Charge):** | $0.00 | **Lender's Portion** | $0.00 |
| **Total Closing Costs:** | **$ 512.25** | | |

**\*These charges are paid outside of the closing by Lender. However, if your loan is terminated within the first 36 months, with the exception of the Lender's Portion of the Mortgage Taxes and the Document Preparation Fee, you will be required to repay us all of these closing costs incurred on your behalf.**

The undersigned Borrower(s), jointly and severally if more than one, agree to all of the terms and conditions of this Home Equity Line of Credit Agreement and Disclosure, which consists of 9 pages, and acknowledge receipt of a completed copy, along with the notice about Your Billing Rights. The date of this Agreement is the latest date next to a Borrower's signature.

_Lloyd Moon_    08/25/2005      _Ordell Moon_    08/25/2005
**LLOYD MOON**                           **ORDELL MOON**

Pay to the order of

~~without recourse on us~~ Citibank, N.A.
successor by merger to West, N.A.
formerly known as Citibank (West), FSB

_Harrison Luval, VP_
Citibank, N.A.



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

1. **DEFINITIONS:** As used herein:

   a) "Account" means the Home Equity Line of Credit Account opened under the Agreement.

   b) "Agreement" means this Home Equity Line of Credit Agreement and Disclosure together with any modifications, amendments, replacements or substitutions thereto.

   c) "Business Day" means any day other than a Saturday, Sunday or a federal holiday.

   d) "Citibank" means Citibank (West), FSB.

   e) "Credit Limit" means the maximum aggregate amount of the Loan Advances that may be outstanding at any given time pursuant to the Agreement.

   f) "Draw Period" means the ten years from the date of the Agreement during which Loan Advances may be made.

   g) "Index" means the highest Prime Rate as published in the Money Rates section of *The Wall Street Journal* from time to time. *The Wall Street Journal* is available at many newsstands and public libraries, or you may obtain copies from The Wall Street Journal, 200 Burnett Road, Chicopee, Massachusetts 01020. A Prime Rate is not necessarily the lowest or best rate available.

   h) "Initial Pricing" means that your Agreement has an Initial Margin, Initial Daily Periodic Rate, and an Initial Annual Percentage Rate.

   i) "Loan Advances" means amounts drawn on your Account pursuant to the Agreement by Home Equity Line of Credit checks, or in any other way Citibank allows, and advances by Citibank pursuant to the Agreement or Mortgage to protect the Property or Citibank's security interest in the Property, including but not limited to advances to maintain required insurance on the Property or to pay taxes on the Property.

   j) "Mortgage" means the mortgage, deed of trust, deed to secure debt or cooperative security agreement which covers the Property which secures the Agreement.

   k) "Property" means the property described in the Mortgage which secures the Agreement.

   l) "Repayment Period" means the twenty years immediately following the Draw Period during which Loan Advances may not be made.

   m) "You," "Your" and "Yours," whether or not the first letter of the word is capitalized, means each person who signs below as Borrower, jointly and severally.

Certain other terms are defined elsewhere in this Agreement.

2. **PROMISE TO PAY:** You promise to pay to Citibank the total of all Closing Costs (if indicated above that Closing Costs are paid by Borrower), all Loan Advances, together with Finance Charges at the applicable daily periodic rate, and any other fees, charges or other Finance Charges, all as provided for in the Agreement.

3. **HOW FINANCE CHARGES ARE IMPOSED AND DETERMINED:**

   a) Finance Charges on Loan Advances at the applicable Daily Periodic Rate begin to accrue on the date the Loan Advance is posted to your Account. There is no grace period for repayment of your balance during which Finance Charges will not accrue. If there are any other Finance Charges payable under the Agreement, they will be dollar amounts itemized herein as Finance Charges and will be due and payable on the date of the Agreement.

   b) The appropriate margin is added to the Index to determine the Annual Percentage Rate, which will be divided by 365 (366 in leap years) to determine the Daily Periodic Rate which will be applied to the balance on which the Finance Charge will be computed during your monthly billing cycle.

MOON
ACAPS
Revised 06/22/2005

Case: 23-10092    Doc# 61    Filed: 06/27/23    Entered: 06/27/23 14:20:35    Page 9 of 52



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

    c) The Index used for a billing cycle will be the daily Index rate published each Business Day.

    d) If your Account has Initial Pricing:
       (i.) The Initial Margin shown above will be in effect from the date of the Agreement until the Date the Initial Margin Ends and Regular Margin Begins shown above.
       (ii.) The Initial Annual Percentage Rate and the Initial Daily Periodic Rate, shown above, will be in effect from the date of the Agreement and can change each Business Day.
       (iii.)On the Date the Initial Margin Ends and Regular Margin Begins shown above, the Regular Margin shown above will go into effect. If the Index has not changed so as to affect the rate, the Regular Annual Percentage Rate and Regular Daily Periodic Rate shown above will then be in effect and can change each Business Day.

    e) If your Account does not have Initial Pricing:
       (i.) The Regular Margin shown above will be in effect from the date of the Agreement.
       (ii.) The Regular Annual Percentage Rate and the Regular Daily Periodic Rate will be in effect from the date of the Agreement and can change each Business Day.

    f) Any increase in the Annual Percentage Rate will result in an increase in the minimum monthly payment. The Annual Percentage Rate will not exceed 18%, no matter how much the Index increases.

    g) You will be sent statements on a monthly cycle which will reflect your Account activity and any amounts you owe Citibank. The amount of the Finance Charge in your statements will be calculated by multiplying the daily periodic rate for the day by the daily balance for your Account at the end of each day in the monthly billing cycle. The resulting Finance Charges for each day are totaled at the end of the statement period and disclosed on the statement as "Finance Charges - Interest". To determine the daily balance Citibank takes the beginning balance of your Account each day, adds any new Loan Advances and other charges, and subtracts any payments and credits. Late Fees, credit life insurance, if any, and unpaid Finance Charges will not be counted as part of the daily balance for purposes of calculating the Finance Charge.

    h) Payments are applied first to due and unpaid Finance Charges and other charges and then to the unpaid balance of Loan Advances.

**4. FINANCE CHARGES NOT DUE TO DAILY PERIODIC RATE; CLOSING COSTS:**

    a) If you retained a mortgage broker, the amount of the mortgage broker fee, if any, is a Finance Charge. The amount of the mortgage broker fee is determined by your agreement with your mortgage broker and is not required by Citibank or paid by Citibank.

    b) If you agreed to pay the Closing Costs for your Account, your Closing Costs include Finance Charges in the amounts shown on page one of this Agreement for the cost of flood and tax certifications, overnight courier fees, and the cost charged by Citibank's attorneys or closing agents to conduct the closing for your Account.

    c) A transaction fee (Finance Charge) of $100.00 will be assessed each time you convert balances to a fixed rate, amortized repayment schedule pursuant to Section 13 of this Agreement.

**5. OTHER CHARGES:** These are charges other than Finance Charges. These charges are not counted as part of your daily unpaid balance of Loan Advances for purposes of computing Finance Charges:

    a) There is a $50 Annual Fee associated with your Account. This fee will automatically be charged to your Account in the same manner as a Loan Advance beginning on the first anniversary of your Account opening and annually thereafter.

    b) Late Fee. If Citibank does not receive the full amount of any monthly payment due within 15 calendar days of the due date, you will be charged a Late Fee of the greater of 6% of the overdue payment or $5. However, you will not be charged a Late Fee on an unpaid Late Fee.

ACAPS

Case: 23-10092    Doc# 61    Filed: 06/27/23    Entered: 06/27/23 14:20:35    Page 10 of 52



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

c) Overlimit Fee. If there is a Loan Advance which causes your Credit Limit to be exceeded, Citibank will charge you a $10 overlimit fee. This charge will not be imposed on more than four transactions a day.

d) Stop Payment Fee. If you request Citibank to stop payment on one of your Home Equity Line of Credit Checks, Citibank will charge you an $8 stop payment charge per request.

e) Returned Item Fee. If your payment is returned unpaid for any reason, Citibank will charge you a $25 returned item fee.

f) Early Closure Release Fee. If Citibank pays the closing costs to open your Account and, within 36 months of the date of this Agreement, you request that your Account be closed or take any other action which will result in a release of the Mortgage, you agree to pay an early closure release fee which will consist of all costs Citibank incurred to open your Account. These costs are disclosed as Closing Costs on the first page of this Agreement. The amount of this fee will be automatically charged to your Account in the same manner as a Loan Advance.

g) Document Research Fee. If, for any purpose other than a billing error inquiry or a tax audit inquiry, you request Citibank to provide copies of Account documents, Citibank may charge you $2 per copy and a $20 per hour document research fee.

h) Other Fees Disclosed in Agreement. Any charges imposed by Citibank, if any, in connection with your Account are disclosed above at the beginning of the Agreement.

i) Other Fees Disclosed in Mortgage. You agree to pay any other fees or charges provided for in the Mortgage or otherwise provided for in the Agreement.

j) Fee to Release Prior Lien. You may have to pay a fee to release a prior lien or security interest in the Property.

k) You agree to pay any reasonable costs incurred by Citibank in connection with the enforcement of its rights and remedies under the Agreement and the Mortgage, including, but not limited to, any reasonable attorneys' fees and other collection costs.

6. **SECURITY INTEREST IN PROPERTY:** As security for the Agreement, you are giving Citibank a security interest in the Property located at the address shown above, which security interest secures all of your obligations under this Agreement and the Mortgage. This Property is more fully described in the Mortgage you will sign along with this Agreement. Collateral which secures other obligations to Citibank may also secure the Agreement.

7. **PAYMENT TERMS:** You agree to pay your monthly payments by the due date shown on your monthly statement. During the Draw Period, you agree to pay a minimum monthly payment, which will be shown on your monthly statement, and which will equal the sum of any past due or over Credit Limit amounts plus accrued and unpaid Finance Charges and other unpaid fees or charges imposed pursuant to the Agreement. Your paying this minimum monthly payment will not reduce the principal balance of Loan Advances which you owe Citibank, except to the extent over Credit Limit amounts are paid. During the Repayment Period, you agree to pay a monthly payment, which will be shown on your monthly statement, and which will equal the Finance Charges that have accrued on the outstanding balance for the billing period, plus principal equal to the greater of $50 or 1/240th of your principal balance of Loan Advances as of the end of the Draw Period, plus the sum of the following amounts when applicable: past due amounts on your Account, amount owing in excess of your Credit Limit, Late Fees and other charges imposed pursuant to the Agreement. On the last payment due date of the Repayment Period, any remaining unpaid amounts owed Citibank will be due and payable. You may prepay your Account in whole or in part at any time without penalty, but if you request that your Account be closed or take any other action which will result in a release of the Mortgage, you may owe an early closure release fee as provided for in the OTHER CHARGES section. Loan Advances may not be drawn to make payments on the Account. Citibank may accept late payments or partial payments, even though marked "payment in full," without losing any of Citibank's rights under the Agreement.

8. **TRANSACTION REQUIREMENTS:** You may draw Loan Advances during the Draw Period up to your Credit Limit if your Account has not been closed or suspended or your Credit Limit reduced to where further Loan Advances would not be permitted.

9. **TERMINATION OF ACCOUNT BY CITIBANK:** Citibank may close your Account, and require payment of the outstanding balance in full in a single payment, if:

Revised 06/22/2005

MOON

ACAPS

Case: 23-10092    Doc# 61    Filed: 06/27/23    Entered: 06/27/23 14:20:35    Page 11 of 52



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

 a) You fail to meet the repayment terms of the Agreement for any outstanding balance.

 b) There has been fraud or a material misrepresentation by you in connection with the Account.

 c) You take any action or fail to take any action which adversely affects the Property or Citibank's security interest in the Property, including but not limited to: a transfer of title to the Property or sale of the Property without Citibank's written permission; a failure to maintain any required insurance on the Property; failure to pay taxes on the Property; you permit the filing of a lien senior to that held by Citibank; the sole Borrower obligated on the Account dies; the Property is taken through eminent domain; a prior lien-holder forecloses; you commit waste or otherwise destructively use or fail to maintain the Property in a way that adversely affects the Property; there is illegal use of the Property which could subject the Property to seizure; one of two Co-Borrowers dies and Citibank's security is thereby adversely affected; or you move out of the Property and Citibank's security is thereby adversely affected.

 d) You are or become an "executive officer" of Citibank as defined in Federal Reserve Board Regulation O and Citibank determines to require payment in full to comply with federal regulation.

In addition to the foregoing, Citibank shall have the right to exercise any and all of it rights and remedies allowed by law or as set forth in this Agreement or in the Mortgage, including, but not limited to, the right to bring an action against you and the right to bring a foreclosure action against the Property.

**10. SUSPENSION OF ACCOUNT OR REDUCTION OF CREDIT LIMIT BY CITIBANK:** Citibank may prohibit additional extensions of credit or reduce your Credit Limit during any period in which:

 a) You or any of you request a suspension of the Account or reduction of the Credit Limit.

 b) The maximum Annual Percentage Rate is reached.

 c) The value of the Property declines significantly below the Property's appraised value for purposes of the Account. As an example, if the value of the Property declines such that the initial difference between the Credit Limit and the available equity (based on the Property's appraised value) is reduced by fifty percent, such an event would constitute a significant decline in the value of the Property.

 d) Citibank reasonably believes that you will be unable to fulfill the repayment obligations under the Agreement because of a material change in your financial circumstances.

 e) You are in default of any material obligation under the Agreement or Mortgage.

 f) Citibank is precluded by government action from imposing the Annual Percentage Rate provided for in the Agreement.

 g) The priority of Citibank's security interest is adversely affected by government action to the extent that the value of the security interest is less than 120% of the Credit Limit.

 h) Citibank is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

If any of the above circumstances change during the Draw Period and you want to reopen your Account or increase your Credit Limit to the original Credit Limit, you must make such a request to Citibank in writing and pay any bona fide and reasonable appraisal and credit report fees actually incurred by Citibank to investigate whether the above circumstances continue to exist. If Citibank suspended your Account or reduced your Credit Limit as a result of your request, the request for reinstatement must be signed by all of you.

You agree that you will not attempt to obtain any additional credit extensions once you know that your credit privileges have been terminated or suspended. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under the Agreement.

MOON                               Revised 06/22/2005

ACAPS:



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

11. **OTHER CHANGES TO THE ACCOUNT:** Citibank may change the Index and Regular Margin used under the Agreement if the original Index is no longer available, the new index has an historical movement substantially similar to that of the original Index, and the new index and margin would have resulted in an Annual Percentage Rate substantially similar to the rate in effect at the time the original Index became unavailable. Citibank may make a specified change to the Account if you specifically agree to the change in writing at that time. Citibank may make changes to the Account that will unequivocally benefit you throughout the remainder of the Account. Citibank may make insignificant changes in the terms of the Account, including but not limited to: changing the address to which payments are sent; minor changes to features such as the billing cycle date, the payment due date and the day of the month on which Index values are measured; changes in rounding practices within the tolerance rules allowed by applicable regulation; and changes to balance computation methods if the change produces an insignificant difference in the Finance Charge you pay.

12. **PROMOTIONAL RATE OFFERS:** At Citibank's discretion, Citibank may offer you a promotional rate (a promotional daily periodic rate and/or promotional margin). The period of time for which the promotional rate applies may be limited. Citibank will allocate your payments and credits to pay off balances at low promotional rates before paying off balances at higher periodic rates. Any promotional rate, the corresponding periodic rate, and the period of time during which it is in effect will be disclosed to you. Any promotional rate offer will be subject to the terms of the offer and this Agreement.

13. **OPTIONAL CONVERTED BALANCE FEATURE FOR CERTAIN ACCOUNTS:** The terms described herein are available only to accounts with an assigned credit limit of $25,000.00 or greater and a loan to value ratio (LTV) of 80% or less.

During the Draw Period and during the first 15 years of the Repayment Period, and provided that Your Account is in good standing and You meet such other conditions as we may establish, you may use the optional fixed rate Converted Balance feature to convert all or a portion of your Account balance to a fixed rate, amortizing repayment schedule. Once converted, the interest rate on any converted amount will be fixed and will no longer vary. The unpaid balances of all outstanding Converted Balances will reduce your available credit limit within the variable rate portion of your Account. As you repay each Converted Balance, your available credit limit will be replenished in like amounts subject to your general availability to obtain Loan Advances under the terms of this Agreement. The minimum amount of each Converted Balance is $10,000.00 and available loan terms range between 12 to 240 months. You may establish a maximum of three (3) Converted Balances at any one time and may not establish more than five (5) Converted Balances during the term of your Account. You will pay a transaction fee (**Finance Charge**) of $100 when establishing a Converted Balance. You may establish a new Converted Balance to pay off all or part of an existing Converted Balance.

The minimum payment on each Converted Balance will be an amount of principal and interest sufficient to repay the Converted Balance in amortized installments over the term you select provided that you make all payments by the scheduled due date. This minimum payment will not change when the Repayment Period begins. The payment amount is in addition to the minimum monthly payment for the variable rate portion of your Account as provided for in Section 7 above and will be due on the same due date as shown on your monthly statement. If you still owe any part of the Converted Balance or interest thereon as of the final payment date, any remaining unpaid amounts will be due and payable.

The **Annual Percentage Rate** for each Converted Balance is fixed and will be determined by the value of an index. We will take the index in effect on the date the Converted Balance is established by us and add a margin. The index we will use is the Federal Reserve Statistical Release H.15 "Selected Interest Rates" Interest Rate Swaps 14 (3Year). The maximum **ANNUAL PERCENTAGE RATE** that can apply to a Converted Balance is 18%.

14. **TAX IMPLICATIONS:** You should consult a tax advisor regarding the deductibility of interest (Finance Charges) and other charges under the Agreement.

15. **DELAY IN ENFORCEMENT:** Citibank may delay the exercise of Citibank's rights under the Agreement or Mortgage without losing them.

16. **PROPERTY INSURANCE:** You agree to maintain insurance on the Property as provided for in the Mortgage. If Borrower fails to maintain property insurance, Citibank may obtain insurance coverage, at Citibank's option and Borrower's expense. Citibank is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Citibank, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any

MOON

Revised 06/22/2005

ACAPS



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Citibank under this Section shall be considered Loan Advances and become additional debt of Borrower secured by the Mortgage.

17. **CREDIT INFORMATION:** You understand and agree that Citibank may obtain credit reports for credit applications and for updates, renewals or extensions of the credit granted. Upon request, Citibank will inform you if a report has been obtained and will give you the name and address of the agency that furnished the report. You also agree that Citibank may obtain and use credit reports and other information that Citibank has obtained in a lawful manner consistent with Citibank's privacy policies about you for subsequent solicitations or for any other lawful purpose.

18. **FURTHER ASSURANCES:** You agree that, upon Citibank's request, you will promptly execute, acknowledge, initial and deliver to Citibank any documentation Citibank deems necessary to replace or correct any lost, misplaced, misstated or inaccurate document signed by you at closing.

19. **GOVERNING LAW:** The Agreement will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of California; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Agreement will be governed by the law of the state where the Property is located.

20. **DUE ON SALE:** The Mortgage or Deed of Trust which covers the Property contains substantially the following provision: Due on Transfer Provision – Transfer of the Property. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Citibank's prior written consent, Citibank may, at Citibank's option, require immediate payment in full of all sums secured by this Mortgage or Deed of Trust. However, Citibank shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Mortgage or Deed of Trust. If Citibank exercises this option, Citibank shall give You notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Mortgage or Deed of Trust must be paid. If these sums are not paid prior to the expiration of this period, Citibank may invoke any remedies permitted by this Mortgage or Deed of Trust without further notice or demand on You.

21. **CHANGE IN NAME, ADDRESS OR EMPLOYMENT:** You agree to notify us in writing of any change in name, address or employment.

22. **NO WAIVER:** Neither you nor Citibank shall be deemed to have waived any of rights, powers or remedies hereunder unless such waiver is embodied in a writing executed by either you or Citibank. The waiver by either you or Citibank of any breach or default by the other party to the Agreement in the performance of any obligation hereunder shall not constitute a waiver of any subsequent breach or default.

23. **NOTICES:** All notices provided for in the Agreement shall be in writing and shall be deemed given (a) when delivered on a Business Day if delivered personally, (b) on the day after deposit with any overnight courier if such date is a Business Day, (c) three days after deposit in the United States mail, if delivered by certified mail, return receipt requested, postage prepaid and addressed to you at the address set forth on the first page of the Agreement or addressed to Citibank at the customer service address shown on your monthly statement.

24. **INVALIDITY CLAUSE:** If any provision of the Agreement shall be otherwise unlawful, void, or for any reason unenforceable, then that provision shall be enforced to the maximum extent permissible so as to effect the intent of you and Citibank. In either case, the remainder of the Agreement shall continue in full force and effect.

Case: 23-10092   Doc# 61   Filed: 06/27/23   Entered: 06/27/23 14:20:35   Page 14 of 52



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

## YOUR BILLING RIGHTS (KEEP THIS NOTICE FOR FUTURE USE)

This notice contains important information about your rights and Citibank's responsibilities under the Fair Credit Billing Act.

**Notify Citibank in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to Citibank on a separate sheet at the address listed on your bill. Write to Citibank as soon as possible. Citibank must hear from you no later than 60 days after Citibank sent you the first bill on which the error or problem appeared. You can telephone Citibank, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized Citibank to pay your Home Equity Line of Credit bill automatically from your checking or other authorized account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach Citibank three business days before the automatic payment is scheduled to occur.

## YOUR RIGHTS AND CITIBANK'S RESPONSIBILITIES AFTER
## CITIBANK RECEIVES YOUR WRITTEN NOTICE

Citibank must acknowledge your letter within 30 days, unless Citibank has corrected the error by then. Within 90 days, Citibank must either correct the error or explain why Citibank believes the bill was correct.

After Citibank receives your letter, Citibank cannot try to collect any amount you question, or report you as delinquent. Citibank can continue to bill you for the amount you question, including Finance Charges, and Citibank can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while Citibank is investigating, but you are still obligated to pay the parts of your bill that are not in question.

If Citibank finds that Citibank made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If Citibank did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, Citibank will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Citibank thinks you owe, Citibank may report you as delinquent. However, if Citibank's explanation does not satisfy you and you write to Citibank within ten days telling Citibank that you still refuse to pay, Citibank must tell anyone Citibank reports you to that you have a question about your bill. And, Citibank must tell you the name of anyone Citibank reported you to. Citibank must tell anyone Citibank reports you to that the matter has been settled between you and Citibank when it finally is.

If Citibank does not follow these rules, Citibank cannot collect the first $50 of the questioned amount, even if your bill was correct.

MOON

Revised 06/22/2005

ACAPS

Case: 23-10092    Doc# 61    Filed: 06/27/23    Entered: 06/27/23 14:20:35    Page 15 of 52



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

**AUTHORIZATION TO CHARGE ACCOUNT – AUTO-DEDUCT SERVICE**

By signing below, you authorize Citibank to charge your account described below to pay the minimum amounts due Citibank under the above Home Equity Line of Credit Agreement and Disclosure.

Financial Institution Name: _____

Address: _____

ABA Number: _____

Account type:          [  ] Checking          [  ] Money Market          [  ] Savings

Account Number: _____

_____          _____
Authorized Signature          Date          Authorized Signature          Date

As an option and not a condition to the Agreement, Citibank has offered you the convenience of making payments using pre-authorized payments from a checking or savings account as described.

Your payment will be made automatically on your current due date from your account described above. If your due date falls on a weekend or holiday, your payment will be deducted on the last business day before your due date. If there are insufficient funds in your account, Citibank may debit your account for the payment when sufficient funds are available. Your payment will be made automatically at the minimum due amount, as indicated on your billing statement. Even after you enroll for the auto-deduct service, you should continue to make payments due under your statement until the auto-deduct service is in place for your Account.

Citibank reserves the right to cancel the auto-deduct service for your Account if there are insufficient funds in your Account for any three consecutive scheduled debits or if any payment is 60 days in arrears. Citibank also reserves the right to change the terms and conditions of this Auto Deduct Agreement after 21 days prior notice to you.

YOU MAY ATTACH A COPY OF A VOIDED CHECK OR PREPRINTED DEPOSIT OR WITHDRAWAL SLIP FROM THE ACCOUNT DESCRIBED ABOVE IN WHICH FUNDS ARE TO BE DEBITED FROM.

Revised 06/22/2005

MOON

ACAPS

EXHIBIT "2"

**2005130449**

OFFICIAL RECORDS OF
SONOMA COUNTY
EEVE T. LEWIS

GENERAL PUBLIC
09/02/2005 11:25 TRD    **8**    PGS
RECORDING FEE: 28.00
PAID

When Recorded Mail To:


Southpointe Plaza II
Suite 300
380 Southpointe Blvd.
Canonsburg, PA 15317
(800) 920-0050

**This Instrument Was Prepared By:**
MERWYN RODRIGUES
Citibank
P.O. Box 790017, MS 221
St. Louis, MO 63179
(800) 925-2484

# Home Equity Line of Credit DEED OF TRUST

ACCOUNT NO.: ███

In this Deed, "You", "Your" and "Yours" means, **LLOYD H. MOON AND ORDELL E. MOON, Husband and Wife, as Community Property with Right of Survivorship** , of **1905 BRISTOL ST, PETALUMA, CA  94954**, each person signing as trustor. "We", "Us" and "Our" means **CITIBANK (WEST), FSB ("beneficiary")**, One Sansome St., San Francisco, CA 94104.  The "Trustee" means Citibank Service Corporation, One Sansome St., San Francisco, CA 94104 or any successor appointed pursuant to Paragraph 26 of this Deed of Trust.  The "Borrower" means the individual(s) who has(ve) signed the Home Equity Line of Credit Agreement and Disclosure (the "Agreement") of even date herewith and in connection with this Deed of Trust.

The "Property" means the real estate, including the leasehold (if any), located at **1905 BRISTOL ST, PETALUMA, CA  94954** and having the legal description attached to and made a part of this Deed of Trust.

      THIS MORTGAGE between You, Trustee and Us is made as of the date next to Your first signature below and has a final maturity date 30 years from such date.

The Agreement provides that the credit secured by the Property is an open-end revolving line of credit at a variable rate of interest.  The maximum amount of all loan advances made to the Borrower under the Agreement and which may be secured by this Deed of Trust may not exceed **$300,000.00** (the "Credit Limit").  At any particular time, the outstanding obligation of Borrower to Us under the Agreement may be any sum equal to or less than the Credit Limit plus interest and other charges owing under the Agreement and amounts owing under this Deed of Trust.  Obligations under the Agreement, Deed of Trust and any riders thereto shall not be released even if all indebtedness under the Agreement is paid, unless and until We cause a reconveyance of the Property to be executed to You and such reconveyance is properly recorded.

      TO SECURE to Us:  (a) the payment and performance of all indebtedness and obligations of the Borrower under the Agreement or any modification or replacement of the Agreement; (b) the payment of all other sums advanced in accordance herewith to protect the security of this Deed of Trust, with finance charges thereon at the variable rate described in the Agreement; and (c) the payment of any future advances made by Us to Borrower (pursuant to Paragraph 16 of this Deed of Trust (herein "Future Loan Advances")) and, in consideration of the indebtedness herein recited and the trust herein created, You hereby irrevocably grant and convey to Trustee, in trust, with, if allowed by applicable law, power of sale, the Property.

      TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to You to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights and water stock, and all fixtures now or hereafter attached to the Property (which, if this Deed of Trust is on a unit in a condominium project or planned unit development, shall include the common elements in such project or development associated with such unit), all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property.

CFX-H-SI-703-CA
MOON                  1 of 6                            Revised 06/24/2005
                                              ACAPS ███

Case: 23-10092     Doc# 61     Filed: 06/27/23     Entered: 06/27/23 14:20:35     Page 18 of 52

**Deed of Trust, continued**                                     **citibank®**

IN WITNESS WHEREOF, YOU HAVE EXECUTED THIS DEED OF TRUST, AND AGREE TO BE BOUND BY ALL TERMS
AND CONDITIONS STATED ON PAGES 2 THROUGH 6 FOLLOWING.

_Lloyd H Moon_ 08/25/2005          _Ordell E. Moon_ 08/25/2005
Trustor: **LLOYD H. MOON**                    Trustor: **ORDELL E. MOON**
[ ] **Married**          [ ] **Unmarried**          [ ] **Married**          [ ] **Unmarried**

Trustor:                                    Trustor:
[ ] **Married**          [ ] **Unmarried**          [ ] **Married**          [ ] **Unmarried**

[ ] **Married**          [ ] **Unmarried**          [ ] **Married**          [ ] **Unmarried**

STATE OF CALIFORNIA
COUNTY OF _SONOMA_
On _08/25/2005_, before me, _CLIVE K. PRASAD._
personally appeared **LLOYD H. MOON and ORDELL E. MOON** personally known to me (or proved to me on the basis of
satisfactory evidence) to be the same person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
(Signature of Person Taking Acknowledgment)

CLIVE K. PRASAD
COMM. # 1366967
NOTARY PUBLIC CALIFORNIA
SONOMA COUNTY
My Comm. Expires July 28, 2006

_CLIVE K. PRASAD_
(Signature of Person Taking Acknowledgment Typed, Printed or Stamped)

You covenant that You are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant, and convey the Property,
and that the Property is unencumbered, except for the encumbrances of record and any first deed of trust. You covenant that You warrant
and will defend generally the title to the Property against all claims and demands, except those disclosed in writing to Us as of the date of
this Deed of Trust.

You and We covenant and agree as follows:

1. **Payment of Indebtedness.** Borrower shall promptly pay when due the indebtedness secured by this Deed of Trust including, without
limitation, that evidenced by the Agreement.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Us under the Agreement will be
applied to the principal balance and any finance charges, late charges, collection costs, and other charges owing with respect to the
indebtedness secured by this Deed of Trust in such order as We may choose from time to time.

3. **Charges; Liens.** Except as expressly provided in this Paragraph 3, You shall pay all taxes, assessments and other charges, fines and
impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if
any, by Your making payments, when due, directly to the payee thereof. In the event You make payments directly to the payee thereof,
upon Our request You shall promptly furnish to Us receipts evidencing such payment.

CFX-H-SI-703-CA
MOON                                    2 of 6                    Revised 06/24/2005
                                                                  ACAPS

Case: 23-10092    Doc# 61    Filed: 06/27/23    Entered: 06/27/23 14:20:35    Page 19 of
52



## Deed of Trust, continued

You shall make payments, when due, on any indebtedness secured by a deed of trust or other lien that is prior in right time to this Deed of Trust (a "Prior Deed of Trust"). You shall promptly discharge the lien of any Prior Deed of Trust not disclosed to Us in writing at the time of application for the Agreement, provided, however, that You shall not be required to discharge any such lien so long as You shall (a) in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof, or (b) secure from the holder of such prior lien an agreement in form and substance satisfactory to Us subordinating such lien to the Deed of Trust. You shall not enter into any agreement with the holder of a Prior Deed of Trust whereby such Prior Deed of Trust, or the indebtedness secured thereby, is modified, amended, extended or renewed, without Our prior written consent. You shall neither request nor allow any future advances to be secured by a Prior Deed of Trust without Our prior written consent.

4.  **Hazard Insurance.** You shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as We may require (including flood insurance coverage, if required by Us) and in such amounts and for such periods as We may require. Unless We require in writing otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy. All insurance policies and renewals thereof shall be in form and substance and with carriers acceptable to Us and shall include a standard mortgage clause in favor of and in form and substance satisfactory to Us. In the event of loss, You shall give prompt notice to the insurance carrier and Us. We may make proof of loss if not made promptly by You.

If the Property is abandoned by You, or if You fail to respond to Us within thirty (30) days from the date the notice is mailed by Us to You that the insurance carrier offers to settle a claim for insurance benefits, We are authorized to collect and apply the insurance proceeds at Our option either to restoration or repair of the Property, or to sums secured by this Deed of Trust.

If the Property is acquired by Us under Paragraph 14 of this Deed of Trust, all of Your right, title and interest in and to any insurance policies, and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition, shall pass to Us to the extent of the sums secured by this Deed of Trust immediately prior to such sale or acquisition.

The provisions of this Paragraph 4 shall be subject to the provisions of Paragraph 5 if this Deed of Trust covers a unit in a condominium project or planned unit development.

5.  **Preservation and Maintenance of Property; Condominiums and Planned Unit Developments.** If this Deed of Trust is on a unit in a condominium or a planned unit development (herein "Condominium Project"), then: (a) You shall perform all of Your obligations under the declaration or covenants creating or governing the Condominium Project, the by-laws and regulations of the Condominium Project, and all constituent documents (herein "Project Documents"), including the payment when due of assessments imposed by the homeowners association or other governing body of the Condominium Project (herein "Owner's Association"); (b) You shall be deemed to have satisfied the insurance requirements under Paragraph 4 of this Deed of Trust if the Owners Association maintains in full force and effect a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term "extended coverage" and such other hazards (including flood insurance) as We may require, and in such amounts and for such periods as We may require naming Us as additional loss payee; (c) the provisions of any Project Documents regarding the application of any insurance proceeds from "master" or "blanket" policies covering the Condominium Project shall supersede the provisions of Paragraph 4 of this Deed of Trust to the extent necessary to avoid conflict between the provisions thereof and hereof; (d) You hereby assign to Us the right to receive distributions on account of the Property under "master" or "blanket" policies covering the Condominium Project to the extent not applied to the restoration or repair of the Property, with any such distributions in excess of the amount necessary to satisfy in full the obligations secured by this Deed of Trust being paid to You; (e) You shall give Us prompt written notice of any lapse in any insurance coverage under a "master" or "blanket" policy on the Condominium Project; and (f) You shall not, without Our prior written consent, consent to either (i) the abandonment or termination of the Condominium Project (except for the abandonment or termination provided by law in the case of substantial destruction by fire or other casualty or in the case of a taking or condemnation or eminent domain), (ii) any material amendment to the Project Documents (including any change in the percentage interests of the unit owners in the Condominium Project), or (iii) the effectuation of any decision by the Owners Association to terminate professional management and assume self-management of the Condominium Project. If the Property has rental units, You shall maintain insurance against net loss in addition to the other hazards for which insurance is required herein.

6.  **Protection of Our Security.** If You fail to perform Your obligations under this Deed of Trust, or if any action or proceedings adversely affects Our interest in the Property, We may, at Our option, take any action reasonably necessary (including, without limitation, paying expenses and attorney fees and to have entry upon the Property to make repairs) to perform Your obligations or to protect Our interests. Any amounts disbursed by Us pursuant to this Paragraph 6, with interest thereon at the variable rate described in the Agreement, shall become indebtedness secured by this Deed of Trust (except as expressly provided herein). Nothing contained in this Paragraph 6 shall require Us to incur any expense or take any action hereunder.

---

Case: 23-10092     Doc# 61     Filed: 06/27/23     Entered: 06/27/23 14:20:35     Page 20 of 52

**Deed of Trust, continued**

**citibank**®

**7. Inspection.** We or Our agents may enter and inspect the Property, after giving You reasonable prior notice.

**8. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Us. Neither Borrower nor You will be relieved of any obligation to make payments if We apply the award received to the outstanding balance owed.

If You abandon the Property, or if, after notice by Us to You that the condemnor offers to make an award or settle a claim for damages, You fail to respond to Us within thirty (30) days after the date such notice is mailed, We are authorized to collect and apply the proceeds in the same manner as provided in Paragraph 4 hereof.

**9. Forbearance not a Waiver.** Any forbearance by Us in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy in the future. Any waiver by Us must be in writing and signed by Us.

**10. Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, Your and Our respective successors and assigns, subject to the provisions of Paragraph 13 hereof. All Your covenants and agreements shall be joint and several. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof. Any Trustor who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Trustor's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Trustor hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Trustor's consent and without releasing that Trustor or modifying this Deed of Trust as to that Trustor's interest in the Property.

**11. Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to You provided for in this Deed of Trust shall be given by personal delivery or by mailing such notice by first-class postage paid, addressed to You at the address of the Property shown at the beginning of the Deed of Trust or at such other address as You may designate by notice to Us as provided herein, and (b) any notice to Us shall be given by personal delivery or by mailing such notice by certified mail, return receipt requested, to Our address stated herein or to such other address as We may designate by notice to You as provided herein.

**12. Severability.** If any term of this Deed of Trust is found to be unenforceable, all other provisions will remain in full force.

**13. Due on Transfer Provision - Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Our prior written consent, We may, at Our option, require immediate payment in full of all sums secured by this Deed of Trust. However, We shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Deed of Trust. If We exercise this option, We shall give You notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Deed of Trust must be paid. If these sums are not paid prior to the expiration of this period, We may invoke any remedies permitted by this Deed of Trust without further notice or demand on You.

**14. Default.** If You breach any term in this Deed of Trust, or if Borrower fails to perform any obligation under the Agreement, We may, at Our option, declare all sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale under this Deed of Trust and any other remedies permitted by law. We may collect from You all reasonable costs incurred in enforcing the terms of this Deed of Trust, including attorney's fees and allocated costs of Our salaried employees.

**15. Assignment of Rents.** As additional security hereunder, You hereby assign to Us the rents of the Property; provided, however, that You shall have, prior to acceleration under Paragraph 14 hereof or abandonment of the Property, the right to collect and retain such rents as they become due and payable.

**16. Future Loan Advances.** Upon Your request, We at Our option may make Future Loan Advances to You or Borrower. Such Future Loan Advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by a promissory note or agreement stating that said note or agreement is so secured.

**17. Release.** Upon payment of all sums secured by this Deed of Trust and upon (a) expiration of the Agreement or (b) Your request, We shall release this Deed of Trust and You shall pay all costs of recordation, if any.

Case: 23-10092    Doc# 61    Filed: 06/27/23    Entered: 06/27/23 14:20:35    Page 21 of 52

**Deed of Trust, continued**                                                      citibank®

18. **Appointment of Receiver; Lender in Possession.** Upon acceleration under this Deed of Trust or abandonment of the Property, We shall be entitled to have a receiver appointed by a court to enter upon, take possession of, and manage the Property and collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including but not limited to, receiver's fees and premiums on the receiver's bonds and reasonable attorneys' fees and then to the sums secured by this Deed of Trust. The receiver shall be liable to account only for those rents actually received.

19. **Statement of Obligation.** We may collect a fee for furnishing a statement of obligation in an amount not to exceed the maximum amount permitted under applicable law.

20. **No Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for Our benefit in any capacity, without Our prior written consent.

21. **Fixture Filing.** This Deed of Trust constitutes a financing statement filed as a fixture filing in the Official Records of the County Recorder of the county in which the Property is located with respect to any and all fixtures included within the term "Property" as used in this Deed of Trust and with respect to any goods or other personal property that may now or hereafter become such fixtures.

22. **Third Party Waivers.** In the event that any of You has not also signed the Agreement as Borrower, each of You: (a) agrees that We may, from time to time, without notice to, consent from or demand on You, and without affecting or impairing in any way any of Our rights or Your obligations, (i) renew, extend, accelerate, compromise or change the interest rate or other terms of the Agreement and any promissory note or agreement evidencing a Future Loan Advance, and (ii) accept, waive and release other security (including guarantees) for the obligations arising under the Agreement or any promissory note or agreement evidencing a Future Loan Advance, and (b) waives (i) any right to require Us to proceed against any Borrower or any other person, proceed against or exhaust any security for the obligations secured by this Deed of Trust or pursue any other remedy in Our power whatsoever, (ii) any defense or right against Us arising out of any disability or other defense or cessation of liability of any Borrower for any reason other than full payment, (iii) any defense or right against Us arising out of Our foreclosure upon the Property, even though such foreclosure results in the loss of any right of subrogation, reimbursement or other right You have against any Borrower, (iv) all presentments, diligence, protests, demands and notice of protest, dishonor, and nonperformance, (v) until payment in full of the indebtedness secured by this Deed of Trust, any right of subrogation or the benefit of any security for such indebtedness, and (vi) the benefit of the statute of limitations affecting the Property to the extent permitted by law. Any partial payment by Borrower or other circumstance that operates to toll any statute of limitations as to such person shall operate to toll such statute as to You.

23. **Choice of Law.** The Deed of Trust will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of California; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Deed of Trust will be governed by the law of the state where the Property is located.

24. **Your Copy.** You shall be given one conformed copy of the Agreement and this Deed of Trust.

25. **Loan Charges Legislation Affecting Our Rights.** If the Agreement is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Agreement exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any such loan charge already collected from You or Borrower which exceeded permitted limits will be refunded to You or Borrower; We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to You or Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge due. If enactment or expiration of applicable laws has the effect of rendering any provision of the Agreement or this Deed of Trust unenforceable according to its terms, We may at Our option, require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted by Paragraph 14.

26. **Substitute Trustee.** We may, at our Option, from time to time remove the Trustee and appoint a successor Trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor Trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

27. **Reconveyance.** After compliance with all requirements of the Agreement, We shall request the Trustee to reconvey the Property to You. Trustee shall reconvey the Property without warranty. You shall pay any fee legally charged by the Trustee for the issuance of reconveyance and all costs of recordation.

---



**Deed of Trust, continued**

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR DEED OF TRUST OR MORTGAGE

We and You request the holder of any encumbrance with a lien which has priority over this Deed of Trust give notice to Us, at Our address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the Agreement secured by this Deed of Trust. The Agreement together with all other indebtedness and obligations secured by this Deed of Trust have been paid and performed in full. Trustee is hereby directed to cancel the Agreement and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all estate now held by Trustee to the persons legally entitled thereto.

Date: _____          _____

CFX-H-SI-703-CA                              6 of 6                              Revised 06/24/2005
MOON                                                                  ACAPS █████████

Case: 23-10092     Doc# 61     Filed: 06/27/23     Entered: 06/27/23 14:20:35     Page 23 of 52

Legal Description::

The land referred to is situated in the State of California, County of Sonoma, City of Petaluma, and is described as follows:

Lot 29, as shown on that certain map entitled "Amended Final Map for Mountain Valley Phase No. 1-B", filed in the Office of the County Recorder of Sonoma County, State of California on December 11, 1992 in Book 504 of Maps, at Pages 1 through 7, Sonoma County Records.

Tax ID ████████

Case: 23-10092   Doc# 61   Filed: 06/27/23   Entered: 06/27/23 14:20:35   Page 24 of 52

# ILLEGIBLE NOTARY SEAL DECLARATION

## (GOVERNMENT CODE 27361.7)

I declare under penalty of perjury that the notary seal on the document to which this statement is attached, reads as follows:

NAME OF NOTARY PUBLIC: _Clive K. Prasad_

COMMISSION NUMBER: _1366967_

NOTARY PUBLIC STATE: _CA_

COUNTY: _Sonoma_

MY COMM. EXPIRES: _July 28_
                        **(DATE)**

SIGNATURE OF DECLARANT: _Robin Cox_

PRINT NAME OF DECLARANT: **ROBIN COX**

CITY & STATE OF EXECUTION: _Petaluma, CA_

DATE SIGNED: _8-30-05_

**THE ABOVE INFORMATION MUST BE LEGIBLE FOR SCANNING**

EXHIBIT "3"

**Fill in this information to identify the case:**

Debtor 1    Ordell Elizabeth Moon

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Northern District of California

Case number    23-10092

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. | **Who is the current creditor?** | Citibank, N.A. |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |
| 2. | **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Cenlar, FSB, Attn: Bankruptcy Dept.<br>Name | Cenlar, FSB, Attn: Payment Processing Dept.<br>Name |
| 425 Phillips Blvd.<br>Number    Street | 425 Phillips Blvd.<br>Number    Street |
| Ewing     NJ     08618<br>City     State     ZIP Code | Ewing     NJ     08618<br>City     State     ZIP Code |
| Contact phone   508-651-7524 | Contact phone   508-651-7524 |
| Contact email   BKelectronicnotices@cenlar.com | Contact email   BKelectronicnotices@cenlar.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

| | | |
| --- | --- | --- |
| 4. | **Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____     Filed on ____ / __ / ____<br>                                                                      MM  / DD  / YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No <br> ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   4   1   3   6 |

7. **How much is the claim?**     $ _____250,225.72_____ . **Does this amount include interest or other charges?**

        ☐ No

        ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

9. **Is all or part of the claim secured?**

☐ No

☑ Yes.    The claim is secured by a lien on property.

       **Nature of property:**

       ☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

       ☐ Motor vehicle

       ☐ Other. Describe:   1905 Bristol St, Petaluma, CA 94954

       **Basis for perfection:** _____

       Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

       **Value of property:**               $ _____

       **Amount of the claim that is secured:**     $ _____250,225.72____

       **Amount of the claim that is unsecured:**   $ _____0.00_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

       **Amount necessary to cure any default as of the date of the petition:**     $ _____77,223.83_____

       **Annual Interest Rate** (when case was filed) _4.60_ %

       ☐ Fixed

       ☑ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**     $ _____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check one:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  04/04/2023
               MM / DD / YYYY

/s/ Christina J. Khil
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Christina | J. | Khil |
|---|---|---|---|
|  | First name | Middle name | Last name |

Title      Attorney

Company    Malcolm Cisneros, A Law Corporation
           Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    2112 Business Center Drive
           Number     Street

           Irvine                          CA        92612
           City                            State     ZIP Code

Contact phone  (949) 252-9400              Email     christinao@mclaw.org

# Mortgage Proof of Claim Attachment

(04/16)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 23-10092 | Principal balance | $215,921.14 | Principal & interest due: | $67,578.29 | Principal & interest: | $2,557.47 |
| Debtor 1: | | Interest due: | $24,659.04 | Prepetition fees due: | $9,645.54 | Monthly escrow: | $0.00 |
| | Ordell Elizabeth Moon | Fees, Costs due: | $9,645.54 | Escrow deficiency for funds advanced: | $0.00 | Private mortgage insurance: | $0.00 |
| Debtor 2: | | | | | | | |
| Last 4 digits to identify | 4  1  3  6 | Escrow deficiency for funds advanced: | $0.00 | Projected escrow shortage: | $0.00 | Total monthly payment | $2,557.47 |
| Creditor: | Citibank, N.A. | Less total funds on hand: | -   $0.00 | Less total funds on hand: | -   $0.00 | | |
| Servicer | Cenlar FSB | Total debt: | $250,225.72 | Total prepetition arrearage: | $77,223.83 | | |
| Fixed accrual/daily simple interest/other | Variable | | | | | | |

## Part 5 : Loan Payment History from First Date of Default          ***LOAN TRANSACTION DETAIL ATTACHED***

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 9/15/2019 | $2,040.46 | | | Payment due | | $2,040.46 | | | | | | $219,045.46 | $0.00 | $0.00 | $0.00 |
| 10/15/2019 | $2,188.72 | | | Payment due | | $4,229.18 | | | | | | $219,045.46 | $0.00 | $0.00 | $0.00 |
| 10/28/2019 | | | $2,040.46 | Late charge balan | | $4,229.18 | | | | $2,040.46 | | $219,045.46 | $0.00 | $0.00 | $2,040.46 |
| 10/29/2019 | | | $474.00 | Fee balance trans | | $4,229.18 | | | | $474.00 | | $219,045.46 | $0.00 | $0.00 | $2,514.46 |
| 11/15/2019 | $2,015.71 | | | Payment due | | $6,244.89 | | | | | | $219,045.46 | $0.00 | $0.00 | $2,514.46 |
| 12/15/2019 | $2,181.94 | | | Payment due | | $8,426.83 | | | | | | $219,045.46 | $0.00 | $0.00 | $2,514.46 |
| 12/20/2019 | | $2,040.46 | | Regular Payment | 9/15/2019 | $6,386.37 | | $2,040.46 | | | | $219,045.46 | $0.00 | $0.00 | $2,514.46 |
| 1/15/2020 | $1,837.65 | | | Payment due | | $8,224.02 | | | | | | $219,045.46 | $0.00 | $0.00 | $2,514.46 |
| 1/28/2020 | | | $105.00 | Broker Price Opin | | $8,224.02 | | | | $105.00 | | $219,045.46 | $0.00 | $0.00 | $2,619.46 |
| 2/3/2020 | | | $117.88 | Late Charge | | $8,224.02 | | | | $117.88 | | $219,045.46 | $0.00 | $0.00 | $2,737.34 |
| 2/15/2020 | $1,136.53 | | | Payment due | | $9,360.55 | | | | | | $219,045.46 | $0.00 | $0.00 | $2,737.34 |
| 3/5/2020 | | | $121.10 | Late Charge | | $9,360.55 | | | | $121.10 | | $219,045.46 | $0.00 | $0.00 | $2,858.44 |
| 3/15/2020 | $1,136.53 | | | Payment due | | $10,497.08 | | | | | | $219,045.46 | $0.00 | $0.00 | $2,858.44 |
| 4/3/2020 | | | $119.40 | Late Charge | | $10,497.08 | | | | $119.40 | | $219,045.46 | $0.00 | $0.00 | $2,977.84 |
| 4/6/2020 | | $2,188.72 | | Regular Payment | 10/15/2019 | $8,308.36 | | $2,188.72 | | | | $219,045.46 | $0.00 | $0.00 | $2,977.84 |
| 4/6/2020 | | $2,015.71 | | Regular Payment | 11/15/2019 | $6,292.65 | | $2,015.71 | | | | $219,045.46 | $0.00 | $0.00 | $2,977.84 |
| 4/6/2020 | | $2,181.94 | | Regular Payment | 12/15/2019 | $4,110.71 | $1,286.67 | $895.27 | | | | $217,758.79 | $0.00 | $0.00 | $2,977.84 |

Official Form 410A                    **Mortgage Proof of Claim Attachment**                    page 1 of 5

# Mortgage Proof of Claim Attachment: Additional Page

(04/16)

Case Number: 23-10092
Debtor 1: Ordell Elizabeth Moon

**Part 5 : Loan Payment History from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 4/6/2020 | | $1,837.65 | | Regular Payment | 1/15/2020 | $2,273.06 | $1,837.65 | | | | | $215,921.14 | | $0.00 | $2,977.84 | $0.00 |
| 4/15/2020 | $1,136.53 | | | Payment due | | $3,409.59 | | | | | | $215,921.14 | | $0.00 | $2,977.84 | $0.00 |
| 5/4/2020 | | | $109.95 | Late Charge | | $3,409.59 | | | | $109.95 | | $215,921.14 | | $0.00 | $3,087.79 | $0.00 |
| 5/15/2020 | $1,725.99 | | | Payment due | | $5,135.58 | | | | | | $215,921.14 | | $0.00 | $3,087.79 | $0.00 |
| 6/3/2020 | | | $103.56 | Late Charge | | $5,135.58 | | | | $103.56 | | $215,921.14 | | $0.00 | $3,191.35 | $0.00 |
| 6/15/2020 | $1,685.17 | | | Payment due | | $6,820.75 | | | | | | $215,921.14 | | $0.00 | $3,191.35 | $0.00 |
| 7/6/2020 | | | $101.11 | Late Charge | | $6,820.75 | | | | $101.11 | | $215,921.14 | | $0.00 | $3,292.46 | $0.00 |
| 7/15/2020 | $1,666.90 | | | Payment due | | $8,487.65 | | | | | | $215,921.14 | | $0.00 | $3,292.46 | $0.00 |
| 8/3/2020 | | | $100.01 | Late Charge | | $8,487.65 | | | | $100.01 | | $215,921.14 | | $0.00 | $3,392.47 | $0.00 |
| 8/15/2020 | $1,721.75 | | | Payment due | | $10,209.40 | | | | | | $215,921.14 | | $0.00 | $3,392.47 | $0.00 |
| 9/3/2020 | | | $103.31 | Late Charge | | $10,209.40 | | | | $103.31 | | $215,921.14 | | $0.00 | $3,495.78 | $0.00 |
| 9/15/2020 | $1,703.47 | | | Payment due | | $11,912.87 | | | | | | $215,921.14 | | $0.00 | $3,495.78 | $0.00 |
| 10/5/2020 | | | $103.21 | Late Charge | | $11,912.87 | | | | $103.21 | | $215,921.14 | | $0.00 | $3,598.99 | $0.00 |
| 10/7/2020 | | | $85.00 | Broker Price Opi | | $11,912.87 | | | | $85.00 | | $215,921.14 | | $0.00 | $3,683.99 | $0.00 |
| 10/15/2020 | $1,703.47 | | | Payment due | | $13,616.34 | | | | | | $215,921.14 | | $0.00 | $3,683.99 | $0.00 |
| 11/3/2020 | | | $102.21 | Late Charge | | $13,616.34 | | | | $102.21 | | $215,921.14 | | $0.00 | $3,786.20 | $0.00 |
| 11/15/2020 | $1,685.17 | | | Payment due | | $15,301.51 | | | | | | $215,921.14 | | $0.00 | $3,786.20 | $0.00 |
| 12/4/2020 | | | $101.11 | Late Charge | | $15,301.51 | | | | $101.11 | | $215,921.14 | | $0.00 | $3,887.31 | $0.00 |
| 12/15/2020 | $1,685.18 | | | Payment due | | $16,986.69 | | | | | | $215,921.14 | | $0.00 | $3,887.31 | $0.00 |
| 1/4/2021 | | | $101.11 | Late Charge | | $16,986.69 | | | | $101.11 | | $215,921.14 | | $0.00 | $3,988.42 | $0.00 |
| 1/15/2021 | $1,703.47 | | | Payment due | | $18,690.16 | | | | | | $215,921.14 | | $0.00 | $3,988.42 | $0.00 |
| 2/3/2021 | | | $102.21 | Late Charge | | $18,690.16 | | | | $102.21 | | $215,921.14 | | $0.00 | $4,090.63 | $0.00 |
| 2/4/2021 | | | $15.00 | Property Insp | | $18,690.16 | | | | $15.00 | | $215,921.14 | | $0.00 | $4,105.63 | $0.00 |
| 2/15/2021 | $1,704.53 | | | Payment due | | $20,394.69 | | | | | | $215,921.14 | | $0.00 | $4,105.63 | $0.00 |
| 3/8/2021 | | | $102.27 | Late Charge | | $20,394.69 | | | | $102.27 | | $215,921.14 | | $0.00 | $4,207.90 | $0.00 |
| 3/15/2021 | $1,668.35 | | | Payment due | | $22,063.04 | | | | | | $215,921.14 | | $0.00 | $4,207.90 | $0.00 |
| 4/5/2021 | | | $100.10 | Late Charge | | $22,063.04 | | | | $100.10 | | $215,921.14 | | $0.00 | $4,308.00 | $0.00 |
| 4/15/2021 | $1,650.01 | | | Payment due | | $23,713.05 | | | | | | $215,921.14 | | $0.00 | $4,308.00 | $0.00 |
| 5/8/2021 | | | $85.00 | Broker Price Opi | | $23,713.05 | | | | $85.00 | | $215,921.14 | | $0.00 | $4,393.00 | $0.00 |
| 5/15/2021 | $1,741.70 | | | Payment due | | $25,454.75 | | | | | | $215,921.14 | | $0.00 | $4,393.00 | $0.00 |

Case 23-10092 Claim 61-1 Filed 04/04/23 Desc Main Document Page 31 of 52

# Mortgage Proof of Claim Attachment: Additional Page

Case Number    23-10092
Debtor 1    Ordell Elizabeth Moon

**Part 5 : Loan Payment History from First Date of Default**

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 6/15/2021 | $1,686.69 | | | Payment due | | $27,141.44 | | | | | | $215,921.14 | | $0.00 | $4,393.00 | $0.00 |
| 6/30/2021 | | | $15.00 | Property Insp | | $27,141.44 | | | | $15.00 | | $215,921.14 | | $0.00 | $4,408.00 | $0.00 |
| 7/15/2021 | $1,686.68 | | | Payment due | | $28,828.12 | | | | | | $215,921.14 | | $0.00 | $4,408.00 | $0.00 |
| 8/15/2021 | $1,705.03 | | | Payment due | | $30,533.15 | | | | | | $215,921.14 | | $0.00 | $4,408.00 | $0.00 |
| 9/3/2021 | | | $101.20 | Late Charge | | $30,533.15 | | | | $101.20 | | $215,921.14 | | $0.00 | $4,509.20 | $0.00 |
| 9/15/2021 | $1,686.69 | | | Payment due | | $32,219.84 | | | | | | $215,921.14 | | $0.00 | $4,509.20 | $0.00 |
| 9/24/2021 | | | $15.00 | Property Insp | | $32,219.84 | | | | $15.00 | | $215,921.14 | | $0.00 | $4,524.20 | $0.00 |
| 10/4/2021 | | | $101.20 | Late Charge | | $32,219.84 | | | | $101.20 | | $215,921.14 | | $0.00 | $4,625.40 | $0.00 |
| 10/15/2021 | $1,723.37 | | | Payment due | | $33,943.21 | | | | | | $215,921.14 | | $0.00 | $4,625.40 | $0.00 |
| 10/29/2021 | | | $15.00 | Property Insp | | $33,943.21 | | | | $15.00 | | $215,921.14 | | $0.00 | $4,640.40 | $0.00 |
| 11/3/2021 | | | $103.40 | Late Charge | | $33,943.21 | | | | $103.40 | | $215,921.14 | | $0.00 | $4,743.80 | $0.00 |
| 11/15/2021 | $1,686.69 | | | Payment due | | $35,629.90 | | | | | | $215,921.14 | | $0.00 | $4,743.80 | $0.00 |
| 12/6/2021 | | | $101.20 | Late Charge | | $35,629.90 | | | | $100.20 | | $215,921.14 | | $0.00 | $4,844.00 | $0.00 |
| 12/15/2021 | $1,668.35 | | | Payment due | | $37,298.25 | | | | | | $215,921.14 | | $0.00 | $4,844.00 | $0.00 |
| 12/16/2021 | | | $15.00 | Property Insp | | $37,298.25 | | | | $15.00 | | $215,921.14 | | $0.00 | $4,859.00 | $0.00 |
| 1/3/2022 | | | $100.10 | Late Charge | | $37,298.25 | | | | $100.10 | | $215,921.14 | | $0.00 | $4,959.10 | $0.00 |
| 1/10/2022 | | | $85.00 | Broker Price Opi | | $37,298.25 | | | | $85.00 | | $215,921.14 | | $0.00 | $5,044.10 | $0.00 |
| 1/15/2022 | $1,723.36 | | | Payment due | | $39,021.61 | | | | | | $215,921.14 | | $0.00 | $5,044.10 | $0.00 |
| 1/28/2022 | | | $15.00 | Property Insp | | $39,021.61 | | | | $15.00 | | $215,921.14 | | $0.00 | $5,059.10 | $0.00 |
| 2/3/2022 | | | $103.40 | Late Charge | | $39,021.61 | | | | $103.40 | | $215,921.14 | | $0.00 | $5,162.50 | $0.00 |
| 2/15/2022 | $1,705.03 | | | Payment due | | $40,726.64 | | | | | | $215,921.14 | | $0.00 | $5,162.50 | $0.00 |
| 3/7/2022 | | | $102.30 | Late Charge | | $40,726.64 | | | | $102.30 | | $215,921.14 | | $0.00 | $5,264.80 | $0.00 |
| 3/15/2022 | $1,650.01 | | | Payment due | | $42,376.65 | | | | | | $215,921.14 | | $0.00 | $5,264.80 | $0.00 |
| 3/16/2022 | | | $15.00 | Property Insp | | $42,376.65 | | | | $15.00 | | $215,921.14 | | $0.00 | $5,279.80 | $0.00 |
| 4/13/2022 | | | $540.00 | Attorney fee | | $42,376.65 | | | | $540.00 | | $215,921.14 | | $0.00 | $5,819.80 | $0.00 |
| 4/14/2022 | | | $15.00 | Property Insp | | $42,376.65 | | | | $15.00 | | $215,921.14 | | $0.00 | $5,834.80 | $0.00 |
| 4/15/2022 | $1,712.42 | | | Payment due | | $44,089.07 | | | | | | $215,921.14 | | $0.00 | $5,834.80 | $0.00 |
| 5/15/2022 | $1,750.87 | | | Payment due | | $45,839.94 | | | | | | $215,921.14 | | $0.00 | $5,834.80 | $0.00 |
| 5/20/2022 | | | $15.00 | Property Insp | | $45,839.94 | | | | $15.00 | | $215,921.14 | | $0.00 | $5,849.80 | $0.00 |
| 6/15/2022 | $1,758.56 | | | Payment due | | $47,598.50 | | | | | | $215,921.14 | | $0.00 | $5,849.80 | $0.00 |

# Mortgage Proof of Claim Attachment: Additional Page

Case Number     23-10092
Debtor 1     Ordell Elizabeth Moon

**Part 5 : Loan Payment History from First Date of Default**

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Account Activity | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 7/5/2022 | | | $85.00 | Broker Price Opi | | $47,598.50 | | | | $85.00 | | $215,921.14 | | $0.00 | $5,934.80 | $0.00 |
| 7/15/2022 | $1,891.96 | | | Payment due | | $49,490.46 | | | | | | $215,921.14 | | $0.00 | $5,934.80 | $0.00 |
| 7/29/2022 | | | $15.00 | Property Insp | | $49,490.46 | | | | $15.00 | | $215,921.14 | | $0.00 | $5,949.80 | $0.00 |
| 8/12/2022 | | | $91.25 | Attorney cost | | $49,490.46 | | | | $91.25 | | $215,921.14 | | $0.00 | $6,041.05 | $0.00 |
| 8/15/2022 | $1,952.88 | | | Payment due | | $51,443.34 | | | | | | $215,921.14 | | $0.00 | $6,041.05 | $0.00 |
| 9/12/2022 | | | $15.00 | Property Insp | | $51,443.34 | | | | $15.00 | | $215,921.14 | | $0.00 | $6,056.05 | $0.00 |
| 9/15/2022 | $2,023.29 | | | Payment due | | $53,466.63 | | | | | | $215,921.14 | | $0.00 | $6,056.05 | $0.00 |
| 9/21/2022 | | | $540.00 | Attorney fee | | $53,466.63 | | | | $540.00 | | $215,921.14 | | $0.00 | $6,596.05 | $0.00 |
| 9/21/2022 | | | $28.40 | Attorney cost | | $53,466.63 | | | | $28.40 | | $215,921.14 | | $0.00 | $6,624.45 | $0.00 |
| 10/11/2022 | | | $15.00 | Property Insp | | $53,466.63 | | | | $15.00 | | $215,921.14 | | $0.00 | $6,639.45 | $0.00 |
| 10/15/2022 | $2,180.93 | | | Payment due | | $55,647.56 | | | | | | $215,921.14 | | $0.00 | $6,639.45 | $0.00 |
| 11/4/2022 | | | $20.00 | Property Insp | | $55,647.56 | | | | $20.00 | | $215,921.14 | | $0.00 | $6,659.45 | $0.00 |
| 11/15/2022 | $2,219.09 | | | Payment due | | $57,866.65 | | | | | | $215,921.14 | | $0.00 | $6,659.45 | $0.00 |
| 11/17/2022 | | | $424.80 | Attorney fee | | $57,866.65 | | | | $424.80 | | $215,921.14 | | $0.00 | $7,084.25 | $0.00 |
| 11/17/2022 | | | $91.00 | Attorney cost | | $57,866.65 | | | | $91.00 | | $215,921.14 | | $0.00 | $7,175.25 | $0.00 |
| 11/17/2022 | | | $100.00 | Attorney cost | | $57,866.65 | | | | $100.00 | | $215,921.14 | | $0.00 | $7,275.25 | $0.00 |
| 11/17/2022 | | | $32.24 | Attorney cost | | $57,866.65 | | | | $32.24 | | $215,921.14 | | $0.00 | $7,307.49 | $0.00 |
| 11/17/2022 | | | $510.00 | Attorney cost | | $57,866.65 | | | | $510.00 | | $215,921.14 | | $0.00 | $7,817.49 | $0.00 |
| 12/6/2022 | | | $20.00 | Property Insp | | $57,866.65 | | | | $20.00 | | $215,921.14 | | $0.00 | $7,837.49 | $0.00 |
| 12/15/2022 | $2,339.48 | | | Payment due | | $60,206.13 | | | | | | $215,921.14 | | $0.00 | $7,837.49 | $0.00 |
| 1/15/2023 | $2,372.90 | | | Payment due | | $62,579.03 | | | | | | $215,921.14 | | $0.00 | $7,837.49 | $0.00 |
| 1/23/2023 | | | $20.00 | Property Insp | | $62,579.03 | | | | $20.00 | | $215,921.14 | | $0.00 | $7,857.49 | $0.00 |
| 1/30/2023 | | | $85.00 | Broker Price Opi | | $62,579.03 | | | | $85.00 | | $215,921.14 | | $0.00 | $7,942.49 | $0.00 |
| 2/3/2023 | | | $125.00 | Attorney cost | | $62,579.03 | | | | $125.00 | | $215,921.14 | | $0.00 | $8,067.49 | $0.00 |
| 2/3/2023 | | | $1,421.00 | Attorney cost | | $62,579.03 | | | | $1,421.00 | | $215,921.14 | | $0.00 | $9,488.49 | $0.00 |
| 2/7/2023 | | | $31.16 | Attorney cost | | $62,579.03 | | | | $31.16 | | $215,921.14 | | $0.00 | $9,519.65 | $0.00 |
| 2/7/2023 | | | $7.31 | Attorney cost | | $62,579.03 | | | | $7.31 | | $215,921.14 | | $0.00 | $9,526.96 | $0.00 |
| 2/7/2023 | | | $1.58 | Attorney cost | | $62,579.03 | | | | $1.58 | | $215,921.14 | | $0.00 | $9,528.54 | $0.00 |
| 2/7/2023 | | | $97.00 | Attorney cost | | $62,579.03 | | | | $97.00 | | $215,921.14 | | $0.00 | $9,625.54 | $0.00 |
| 2/15/2023 | $2,440.93 | | | Payment due | | $65,019.96 | | | | | | $215,921.14 | | $0.00 | $9,625.54 | $0.00 |

Official Form 410A      **Mortgage Proof of Claim Attachment**      page 4 of 5

# Mortgage Proof of Claim Attachment: Additional Page

(04/16)

Case Number: 23-10092
Debtor 1: Ordell Elizabeth Moon

**Part 5 : Loan Payment History from First Date of Default**

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 2/24/2023 | | | $20.00 | | | $65,019.96 | | | | $20.00 | | $215,921.14 | | $0.00 | $9,645.54 | $0.00 |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

Official Form 410A  **Mortgage Proof of Claim Attachment**  page 5 of 5

**PROOF OF SERVICE**

I am employed by the law firm of Malcolm & Cisneros in the county of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 2112 Business Center Drive, Second Floor, Irvine, California 92612

On April 4, 2023, I caused to be served the document entitled:

**PROOF OF CLAIM**

on the following interested parties:

| Debtor(s): Ordell Elizabeth Moon 1905 Bristol St. Petaluma, CA 94954 | Debtor's Attorney: Pro Se |
|---|---|
| Chapter 13 Trustee: David Burchard PO Box 8059 Foster City, CA 94404 | |

☒(By Mail) I caused each envelope, with postage prepaid, to be placed in the United States Mail at Irvine, California

☐(By Hand) I caused each envelope to be delivered by hand

☐(By Overnight Courier) I caused each envelope, with postage prepaid, to be sent by Federal Express/Express Mail.

☐(By Facsimile Transmission) I caused each document to be sent by automatic facsimile transmission to the following telephone numbers and confirmed by voice communication that the transmission was received:

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction service was made and that the foregoing is true and correct and this declaration was executed on the date indicated below at Irvine, California.

Dated:  April 4, 2023

*/s/ Diep Quach*

Diep Quach



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

Borrower(s):  **LLOYD MOON and ORDELL MOON**

Property Address: **1905 BRISTOL ST, PETALUMA, CA  94954 (the "Property")**

| | |
|---|---|
| **Credit Limit:** | **$300,000.00** |
| **Index:** | **6.500%** |
| **Initial Margin (if applicable):** | **Not Applicable** |
| **Initial Daily Periodic Rate (if applicable):** | **Not Applicable** |
| **Initial ANNUAL PERCENTAGE RATE (if applicable):** (The Initial Annual Percentage Rate will vary as the Index varies) | **Not Applicable** |
| **Date the Initial Margin Ends and Regular Margin Begins (if applicable):** | **Not Applicable** |
| **Regular Margin:** | **-0.150%** |
| **Regular Daily Periodic Rate:** | **0.017397%** |
| **Regular ANNUAL PERCENTAGE RATE:** (The Regular Annual Percentage Rate will vary as the Index varies) | **6.350%** (Index +/- the Regular Margin) |

| | | | |
|---|---|---|---|
| **Mortgage Broker Fee (Finance Charge) Paid by Borrower:** | **$275.00** | **Mortgage Broker Fee Paid by Lender:** | **$1,250.00** |

### Borrower Charges Paid Outside of Closing (Finance Charge)

| | | | |
|---|---|---|---|
| **Broker - Processing Fee:** | $0.00 | **Broker - Origination Fee:** | $0.00 |
| **Broker - Courier / Freight / Postage:** | $0.00 | **Broker - Appraisal Fee:** | $0.00 |
| **Broker - Application Fee:** | $0.00 | **Broker - Credit Report Fee:** | $0.00 |
| **Broker - Administration Fee:** | $0.00 | **Broker - Other:** | $0.00 |

### Closing Costs, Paid by Citibank*

| | | | |
|---|---|---|---|
| **Appraisal Fee:** | $0.00 | **Recording Fees:** Sonoma County Recorder | $31.00 |
| **Credit Report Fee:** | $2.00 | **City/County Tax/Stamps:** | $0.00 |
| **Flood Certification Fee (Finance Charge):** | $4.25 | **State Tax/Stamps:** | $0.00 |
| **Settlement or Closing Fee (Finance Charge):** NASCO | $350.00 | **Intangible Tax:** | $0.00 |
| **Abstract or Title Search Fee:** NASCO | $125.00 | **Document Stamp Tax:** | $0.00 |
| **Title Examination Fee:** | $0.00 | **Mortgage Registration Tax:** | $0.00 |
| **Title Insurance Binder:** | $0.00 | **Tax Certificate Fee:** | $0.00 |
| **Document Preparation:** | $0.00 | **Mortgage Taxes:** Borrower Portion | $0.00 |
| **Overnight/Postage Fee (Finance Charge):** | $0.00 | Lender's Portion | $0.00 |

**Total Closing Costs:**       **$ 512.25**

*These charges are paid outside of the closing by Lender.  However, if your loan is terminated within the first 36 months, with the exception of the Lender's Portion of the Mortgage Taxes and the Document Preparation Fee, you will be required to repay us all of these closing costs incurred on your behalf.

The undersigned Borrower(s), jointly and severally if more than one, agree to all of the terms and conditions of this Home Equity Line of Credit Agreement and Disclosure, which consists of 9 pages, and acknowledge receipt of a completed copy, along with the notice about Your Billing Rights.  The date of this Agreement is the latest date next to a Borrower's signature.

_Lloyd Moon_   08/25/2005              _Ordell Moon_   08/25/2005
**LLOYD MOON**                              **ORDELL MOON**

Pay to the order of

_____

without recourse us Citibank, N.A.
successor by merger to West, N.A.
formerly known as Citibank (West), FSB

_Barbara Loval_
Barbara Loval, VP
Citibank, N.A.



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

1. **DEFINITIONS:** As used herein:

   a) "Account" means the Home Equity Line of Credit Account opened under the Agreement.

   b) "Agreement" means this Home Equity Line of Credit Agreement and Disclosure together with any modifications, amendments, replacements or substitutions thereto.

   c) "Business Day" means any day other than a Saturday, Sunday or a federal holiday.

   d) "Citibank" means Citibank (West), FSB.

   e) "Credit Limit" means the maximum aggregate amount of the Loan Advances that may be outstanding at any given time pursuant to the Agreement.

   f) "Draw Period" means the ten years from the date of the Agreement during which Loan Advances may be made.

   g) "Index" means the highest Prime Rate as published in the Money Rates section of *The Wall Street Journal* from time to time. *The Wall Street Journal* is available at many newsstands and public libraries, or you may obtain copies from The Wall Street Journal, 200 Burnett Road, Chicopee, Massachusetts 01020. A Prime Rate is not necessarily the lowest or best rate available.

   h) "Initial Pricing" means that your Agreement has an Initial Margin, Initial Daily Periodic Rate, and an Initial Annual Percentage Rate.

   i) "Loan Advances" means amounts drawn on your Account pursuant to the Agreement by Home Equity Line of Credit checks, or in any other way Citibank allows, and advances by Citibank pursuant to the Agreement or Mortgage to protect the Property or Citibank's security interest in the Property, including but not limited to advances to maintain required insurance on the Property or to pay taxes on the Property.

   j) "Mortgage" means the mortgage, deed of trust, deed to secure debt or cooperative security agreement which covers the Property which secures the Agreement.

   k) "Property" means the property described in the Mortgage which secures the Agreement.

   l) "Repayment Period" means the twenty years immediately following the Draw Period during which Loan Advances may not be made.

   m) "You," "Your" and "Yours," whether or not the first letter of the word is capitalized, means each person who signs below as Borrower, jointly and severally.

   Certain other terms are defined elsewhere in this Agreement.

2. **PROMISE TO PAY:** You promise to pay to Citibank the total of all Closing Costs (if indicated above that Closing Costs are paid by Borrower), all Loan Advances, together with Finance Charges at the applicable daily periodic rate, and any other fees, charges or other Finance Charges, all as provided for in the Agreement.

3. **HOW FINANCE CHARGES ARE IMPOSED AND DETERMINED:**

   a) Finance Charges on Loan Advances at the applicable Daily Periodic Rate begin to accrue on the date the Loan Advance is posted to your Account. There is no grace period for repayment of your balance during which Finance Charges will not accrue. If there are any other Finance Charges payable under the Agreement, they will be dollar amounts itemized herein as Finance Charges and will be due and payable on the date of the Agreement.

   b) The appropriate margin is added to the Index to determine the Annual Percentage Rate, which will be divided by 365 (366 in leap years) to determine the Daily Periodic Rate which will be applied to the balance on which the Finance Charge will be computed during your monthly billing cycle.

Case 23-10092    Doc# 61-1    Filed 06/20/23    Entered 06/20/28 14:20:38    Page 37 of
52



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

   c) The Index used for a billing cycle will be the daily Index rate published each Business Day.

   d) If your Account has Initial Pricing:
      (i.) The Initial Margin shown above will be in effect from the date of the Agreement until the Date the Initial Margin Ends and Regular Margin Begins shown above.
      (ii.) The Initial Annual Percentage Rate and the Initial Daily Periodic Rate, shown above, will be in effect from the date of the Agreement and can change each Business Day.
      (iii.)On the Date the Initial Margin Ends and Regular Margin Begins shown above, the Regular Margin shown above will go into effect. If the Index has not changed so as to affect the rate, the Regular Annual Percentage Rate and Regular Daily Periodic Rate shown above will then be in effect and can change each Business Day.

   e) If your Account does not have Initial Pricing:
      (i.) The Regular Margin shown above will be in effect from the date of the Agreement.
      (ii.) The Regular Annual Percentage Rate and the Regular Daily Periodic Rate will be in effect from the date of the Agreement and can change each Business Day.

   f) Any increase in the Annual Percentage Rate will result in an increase in the minimum monthly payment. The Annual Percentage Rate will not exceed 18%, no matter how much the Index increases.

   g) You will be sent statements on a monthly cycle which will reflect your Account activity and any amounts you owe Citibank. The amount of the Finance Charge in your statements will be calculated by multiplying the daily periodic rate for the day by the daily balance for your Account at the end of each day in the monthly billing cycle. The resulting Finance Charges for each day are totaled at the end of the statement period and disclosed on the statement as "Finance Charges - Interest". To determine the daily balance Citibank takes the beginning balance of your Account each day, adds any new Loan Advances and other charges, and subtracts any payments and credits. Late Fees, credit life insurance, if any, and unpaid Finance Charges will not be counted as part of the daily balance for purposes of calculating the Finance Charge.

   h) Payments are applied first to due and unpaid Finance Charges and other charges and then to the unpaid balance of Loan Advances.

**4. FINANCE CHARGES NOT DUE TO DAILY PERIODIC RATE; CLOSING COSTS:**

   a) If you retained a mortgage broker, the amount of the mortgage broker fee, if any, is a Finance Charge. The amount of the mortgage broker fee is determined by your agreement with your mortgage broker and is not required by Citibank or paid by Citibank.

   b) If you agreed to pay the Closing Costs for your Account, your Closing Costs include Finance Charges in the amounts shown on page one of this Agreement for the cost of flood and tax certifications, overnight courier fees, and the cost charged by Citibank's attorneys or closing agents to conduct the closing for your Account.

   c) A transaction fee (Finance Charge) of $100.00 will be assessed each time you convert balances to a fixed rate, amortized repayment schedule pursuant to Section 13 of this Agreement.

**5. OTHER CHARGES:** These are charges other than Finance Charges. These charges are not counted as part of your daily unpaid balance of Loan Advances for purposes of computing Finance Charges:

   a) There is a $50 Annual Fee associated with your Account. This fee will automatically be charged to your Account in the same manner as a Loan Advance beginning on the first anniversary of your Account opening and annually thereafter.

   b) Late Fee. If Citibank does not receive the full amount of any monthly payment due within 15 calendar days of the due date, you will be charged a Late Fee of the greater of 6% of the overdue payment or $5. However, you will not be charged a Late Fee on an unpaid Late Fee.

Revised 06/22/2005

MOON

ACAPS



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

c) Overlimit Fee. If there is a Loan Advance which causes your Credit Limit to be exceeded, Citibank will charge you a $10 overlimit fee. This charge will not be imposed on more than four transactions a day.

d) Stop Payment Fee. If you request Citibank to stop payment on one of your Home Equity Line of Credit Checks, Citibank will charge you an $8 stop payment charge per request.

e) Returned Item Fee. If your payment is returned unpaid for any reason, Citibank will charge you a $25 returned item fee.

f) Early Closure Release Fee. If Citibank pays the closing costs to open your Account and, within 36 months of the date of this Agreement, you request that your Account be closed or take any other action which will result in a release of the Mortgage, you agree to pay an early closure release fee which will consist of all costs Citibank incurred to open your Account. These costs are disclosed as Closing Costs on the first page of this Agreement. The amount of this fee will be automatically charged to your Account in the same manner as a Loan Advance.

g) Document Research Fee. If, for any purpose other than a billing error inquiry or a tax audit inquiry, you request Citibank to provide copies of Account documents, Citibank may charge you $2 per copy and a $20 per hour document research fee.

h) Other Fees Disclosed in Agreement. Any charges imposed by Citibank, if any, in connection with your Account are disclosed above at the beginning of the Agreement.

i) Other Fees Disclosed in Mortgage. You agree to pay any other fees or charges provided for in the Mortgage or otherwise provided for in the Agreement.

j) Fee to Release Prior Lien. You may have to pay a fee to release a prior lien or security interest in the Property.

k) You agree to pay any reasonable costs incurred by Citibank in connection with the enforcement of its rights and remedies under the Agreement and the Mortgage, including, but not limited to, any reasonable attorneys' fees and other collection costs.

6. **SECURITY INTEREST IN PROPERTY:** As security for the Agreement, you are giving Citibank a security interest in the Property located at the address shown above, which security interest secures all of your obligations under this Agreement and the Mortgage. This Property is more fully described in the Mortgage you will sign along with this Agreement. Collateral which secures other obligations to Citibank may also secure the Agreement.

7. **PAYMENT TERMS:** You agree to pay your monthly payments by the due date shown on your monthly statement. During the Draw Period, you agree to pay a minimum monthly payment, which will be shown on your monthly statement, and which will equal the sum of any past due or over Credit Limit amounts plus accrued and unpaid Finance Charges and other unpaid fees or charges imposed pursuant to the Agreement. Your paying this minimum monthly payment will not reduce the principal balance of Loan Advances which you owe Citibank, except to the extent over Credit Limit amounts are paid. During the Repayment Period, you agree to pay a monthly payment, which will be shown on your monthly statement, and which will equal the Finance Charges that have accrued on the outstanding balance for the billing period, plus principal equal to the greater of $50 or 1/240th of your principal balance of Loan Advances as of the end of the Draw Period, plus the sum of the following amounts when applicable: past due amounts on your Account, amount owing in excess of your Credit Limit, Late Fees and other charges imposed pursuant to the Agreement. On the last payment due date of the Repayment Period, any remaining unpaid amounts owed Citibank will be due and payable. You may prepay your Account in whole or in part at any time without penalty, but if you request that your Account be closed or take any other action which will result in a release of the Mortgage, you may owe an early closure release fee as provided for in the OTHER CHARGES section. Loan Advances may not be drawn to make payments on the Account. Citibank may accept late payments or partial payments, even though marked "payment in full," without losing any of Citibank's rights under the Agreement.

8. **TRANSACTION REQUIREMENTS:** You may draw Loan Advances during the Draw Period up to your Credit Limit if your Account has not been closed or suspended or your Credit Limit reduced to where further Loan Advances would not be permitted.

9. **TERMINATION OF ACCOUNT BY CITIBANK:** Citibank may close your Account, and require payment of the outstanding balance in full in a single payment, if:

MOON

Revised 06/22/2005

ACAPS



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

a) You fail to meet the repayment terms of the Agreement for any outstanding balance.

b) There has been fraud or a material misrepresentation by you in connection with the Account.

c) You take any action or fail to take any action which adversely affects the Property or Citibank's security interest in the Property, including but not limited to: a transfer of title to the Property or sale of the Property without Citibank's written permission; a failure to maintain any required insurance on the Property; failure to pay taxes on the Property; you permit the filing of a lien senior to that held by Citibank; the sole Borrower obligated on the Account dies; the Property is taken through eminent domain; a prior lien-holder forecloses; you commit waste or otherwise destructively use or fail to maintain the Property in a way that adversely affects the Property; there is illegal use of the Property which could subject the Property to seizure; one of two Co-Borrowers dies and Citibank's security is thereby adversely affected; or you move out of the Property and Citibank's security is thereby adversely affected.

d) You are or become an "executive officer" of Citibank as defined in Federal Reserve Board Regulation O and Citibank determines to require payment in full to comply with federal regulation.

In addition to the foregoing, Citibank shall have the right to exercise any and all of it rights and remedies allowed by law or as set forth in this Agreement or in the Mortgage, including, but not limited to, the right to bring an action against you and the right to bring a foreclosure action against the Property.

**10. SUSPENSION OF ACCOUNT OR REDUCTION OF CREDIT LIMIT BY CITIBANK:** Citibank may prohibit additional extensions of credit or reduce your Credit Limit during any period in which:

a) You or any of you request a suspension of the Account or reduction of the Credit Limit.

b) The maximum Annual Percentage Rate is reached.

c) The value of the Property declines significantly below the Property's appraised value for purposes of the Account. As an example, if the value of the Property declines such that the initial difference between the Credit Limit and the available equity (based on the Property's appraised value) is reduced by fifty percent, such an event would constitute a significant decline in the value of the Property.

d) Citibank reasonably believes that you will be unable to fulfill the repayment obligations under the Agreement because of a material change in your financial circumstances.

e) You are in default of any material obligation under the Agreement or Mortgage.

f) Citibank is precluded by government action from imposing the Annual Percentage Rate provided for in the Agreement.

g) The priority of Citibank's security interest is adversely affected by government action to the extent that the value of the security interest is less than 120% of the Credit Limit.

h) Citibank is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

If any of the above circumstances change during the Draw Period and you want to reopen your Account or increase your Credit Limit to the original Credit Limit, you must make such a request to Citibank in writing and pay any bona fide and reasonable appraisal and credit report fees actually incurred by Citibank to investigate whether the above circumstances continue to exist. If Citibank suspended your Account or reduced your Credit Limit as a result of your request, the request for reinstatement must be signed by all of you.

You agree that you will not attempt to obtain any additional credit extensions once you know that your credit privileges have been terminated or suspended. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under the Agreement.

Revised 06/22/2005

MOON

ACAPS



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

11. **OTHER CHANGES TO THE ACCOUNT:** Citibank may change the Index and Regular Margin used under the Agreement if the original Index is no longer available, the new index has an historical movement substantially similar to that of the original Index, and the new index and margin would have resulted in an Annual Percentage Rate substantially similar to the rate in effect at the time the original Index became unavailable. Citibank may make a specified change to the Account if you specifically agree to the change in writing at that time. Citibank may make changes to the Account that will unequivocally benefit you throughout the remainder of the Account. Citibank may make insignificant changes in the terms of the Account, including but not limited to: changing the address to which payments are sent; minor changes to features such as the billing cycle date, the payment due date and the day of the month on which Index values are measured; changes in rounding practices within the tolerance rules allowed by applicable regulation; and changes to balance computation methods if the change produces an insignificant difference in the Finance Charge you pay.

12. **PROMOTIONAL RATE OFFERS:** At Citibank's discretion, Citibank may offer you a promotional rate (a promotional daily periodic rate and/or promotional margin). The period of time for which the promotional rate applies may be limited. Citibank will allocate your payments and credits to pay off balances at low promotional rates before paying off balances at higher periodic rates. Any promotional rate, the corresponding periodic rate, and the period of time during which it is in effect will be disclosed to you. Any promotional rate offer will be subject to the terms of the offer and this Agreement.

13. **OPTIONAL CONVERTED BALANCE FEATURE FOR CERTAIN ACCOUNTS:** The terms described herein are available only to accounts with an assigned credit limit of $25,000.00 or greater and a loan to value ratio (LTV) of 80% or less.

During the Draw Period and during the first 15 years of the Repayment Period, and provided that Your Account is in good standing and You meet such other conditions as we may establish, you may use the optional fixed rate Converted Balance feature to convert all or a portion of your Account balance to a fixed rate, amortizing repayment schedule. Once converted, the interest rate on any converted amount will be fixed and will no longer vary. The unpaid balances of all outstanding Converted Balances will reduce your available credit limit within the variable rate portion of your Account. As you repay each Converted Balance, your available credit limit will be replenished in like amounts subject to your general availability to obtain Loan Advances under the terms of this Agreement. The minimum amount of each Converted Balance is $10,000.00 and available loan terms range between 12 to 240 months. You may establish a maximum of three (3) Converted Balances at any one time and may not establish more than five (5) Converted Balances during the term of your Account. You will pay a transaction fee (**Finance Charge**) of $100 when establishing a Converted Balance. You may establish a new Converted Balance to pay off all or part of an existing Converted Balance.

The minimum payment on each Converted Balance will be an amount of principal and interest sufficient to repay the Converted Balance in amortized installments over the term you select provided that you make all payments by the scheduled due date. This minimum payment will not change when the Repayment Period begins. The payment amount is in addition to the minimum monthly payment for the variable rate portion of your Account as provided for in Section 7 above and will be due on the same due date as shown on your monthly statement. If you still owe any part of the Converted Balance or interest thereon as of the final payment date, any remaining unpaid amounts will be due and payable.

The **Annual Percentage Rate** for each Converted Balance is fixed and will be determined by the value of an index. We will take the index in effect on the date the Converted Balance is established by us and add a margin. The index we will use is the Federal Reserve Statistical Release H.15 "Selected Interest Rates" Interest Rate Swaps 14 (3Year). The maximum **ANNUAL PERCENTAGE RATE** that can apply to a Converted Balance is 18%.

14. **TAX IMPLICATIONS:** You should consult a tax advisor regarding the deductibility of interest (Finance Charges) and other charges under the Agreement.

15. **DELAY IN ENFORCEMENT:** Citibank may delay the exercise of Citibank's rights under the Agreement or Mortgage without losing them.

16. **PROPERTY INSURANCE:** You agree to maintain insurance on the Property as provided for in the Mortgage. If Borrower fails to maintain property insurance, Citibank may obtain insurance coverage, at Citibank's option and Borrower's expense. Citibank is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Citibank, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any

MOON          Revised 06/22/2005

ACAPS



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Citibank under this Section shall be considered Loan Advances and become additional debt of Borrower secured by the Mortgage.

17. **CREDIT INFORMATION:** You understand and agree that Citibank may obtain credit reports for credit applications and for updates, renewals or extensions of the credit granted. Upon request, Citibank will inform you if a report has been obtained and will give you the name and address of the agency that furnished the report. You also agree that Citibank may obtain and use credit reports and other information that Citibank has obtained in a lawful manner consistent with Citibank's privacy policies about you for subsequent solicitations or for any other lawful purpose.

18. **FURTHER ASSURANCES:** You agree that, upon Citibank's request, you will promptly execute, acknowledge, initial and deliver to Citibank any documentation Citibank deems necessary to replace or correct any lost, misplaced, misstated or inaccurate document signed by you at closing.

19. **GOVERNING LAW:** The Agreement will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of California; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Agreement will be governed by the law of the state where the Property is located.

20. **DUE ON SALE:** The Mortgage or Deed of Trust which covers the Property contains substantially the following provision: Due on Transfer Provision – Transfer of the Property. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Citibank's prior written consent, Citibank may, at Citibank's option, require immediate payment in full of all sums secured by this Mortgage or Deed of Trust. However, Citibank shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Mortgage or Deed of Trust. If Citibank exercises this option, Citibank shall give You notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Mortgage or Deed of Trust must be paid. If these sums are not paid prior to the expiration of this period, Citibank may invoke any remedies permitted by this Mortgage or Deed of Trust without further notice or demand on You.

21. **CHANGE IN NAME, ADDRESS OR EMPLOYMENT:** You agree to notify us in writing of any change in name, address or employment.

22. **NO WAIVER:** Neither you nor Citibank shall be deemed to have waived any of rights, powers or remedies hereunder unless such waiver is embodied in a writing executed by either you or Citibank. The waiver by either you or Citibank of any breach or default by the other party to the Agreement in the performance of any obligation hereunder shall not constitute a waiver of any subsequent breach or default.

23. **NOTICES:** All notices provided for in the Agreement shall be in writing and shall be deemed given (a) when delivered on a Business Day if delivered personally, (b) on the day after deposit with any overnight courier if such date is a Business Day, (c) three days after deposit in the United States mail, if delivered by certified mail, return receipt requested, postage prepaid and addressed to you at the address set forth on the first page of the Agreement or addressed to Citibank at the customer service address shown on your monthly statement.

24. **INVALIDITY CLAUSE:** If any provision of the Agreement shall be otherwise unlawful, void, or for any reason unenforceable, then that provision shall be enforced to the maximum extent permissible so as to effect the intent of you and Citibank. In either case, the remainder of the Agreement shall continue in full force and effect.

MOON

ACAPS



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

## YOUR BILLING RIGHTS (KEEP THIS NOTICE FOR FUTURE USE)

This notice contains important information about your rights and Citibank's responsibilities under the Fair Credit Billing Act.

**Notify Citibank in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to Citibank on a separate sheet at the address listed on your bill. Write to Citibank as soon as possible. Citibank must hear from you no later than 60 days after Citibank sent you the first bill on which the error or problem appeared. You can telephone Citibank, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized Citibank to pay your Home Equity Line of Credit bill automatically from your checking or other authorized account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach Citibank three business days before the automatic payment is scheduled to occur.

## YOUR RIGHTS AND CITIBANK'S RESPONSIBILITIES AFTER CITIBANK RECEIVES YOUR WRITTEN NOTICE

Citibank must acknowledge your letter within 30 days, unless Citibank has corrected the error by then. Within 90 days, Citibank must either correct the error or explain why Citibank believes the bill was correct.

After Citibank receives your letter, Citibank cannot try to collect any amount you question, or report you as delinquent. Citibank can continue to bill you for the amount you question, including Finance Charges, and Citibank can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while Citibank is investigating, but you are still obligated to pay the parts of your bill that are not in question.

If Citibank finds that Citibank made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If Citibank did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, Citibank will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Citibank thinks you owe, Citibank may report you as delinquent. However, if Citibank's explanation does not satisfy you and you write to Citibank within ten days telling Citibank that you still refuse to pay, Citibank must tell anyone Citibank reports you to that you have a question about your bill. And, Citibank must tell you the name of anyone Citibank reported you to. Citibank must tell anyone Citibank reports you to that the matter has been settled between you and Citibank when it finally is.

If Citibank does not follow these rules, Citibank cannot collect the first $50 of the questioned amount, even if your bill was correct.

Revised 06/22/2005

MOON

ACAPS



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

**AUTHORIZATION TO CHARGE ACCOUNT – AUTO-DEDUCT SERVICE**

By signing below, you authorize Citibank to charge your account described below to pay the minimum amounts due Citibank under the above Home Equity Line of Credit Agreement and Disclosure.

Financial Institution Name: _____

Address: _____

ABA Number: _____

Account type:       [ ] Checking      [ ] Money Market      [ ] Savings

Account Number: _____

_____      _____
Authorized Signature    Date          Authorized Signature    Date

As an option and not a condition to the Agreement, Citibank has offered you the convenience of making payments using pre-authorized payments from a checking or savings account as described.

Your payment will be made automatically on your current due date from your account described above. If your due date falls on a weekend or holiday, your payment will be deducted on the last business day before your due date. If there are insufficient funds in your account, Citibank may debit your account for the payment when sufficient funds are available. Your payment will be made automatically at the minimum due amount, as indicated on your billing statement. Even after you enroll for the auto-deduct service, you should continue to make payments due under your statement until the auto-deduct service is in place for your Account.

Citibank reserves the right to cancel the auto-deduct service for your Account if there are insufficient funds in your Account for any three consecutive scheduled debits or if any payment is 60 days in arrears. Citibank also reserves the right to change the terms and conditions of this Auto Deduct Agreement after 21 days prior notice to you.

YOU MAY ATTACH A COPY OF A VOIDED CHECK OR PREPRINTED DEPOSIT OR WITHDRAWAL SLIP FROM THE ACCOUNT DESCRIBED ABOVE IN WHICH FUNDS ARE TO BE DEBITED FROM.

MOON
Revised 06/22/2005
ACAPS



```
                                              2005130449
                                              OFFICIAL RECORDS OF
                                              SONOMA COUNTY
                                              EEVE T. LEWIS
When Recorded Mail To:        GENERAL PUBLIC
                              09/02/2005 11:25 TRD     8    PGS
      Southpointe Plaza II    RECORDING FEE: 28.00
      Suite 300               PAID
      380 Southpointe Blvd.
      Canonsburg, PA 15317
      (800) 920-0050
```

**This Instrument Was Prepared By:**
MERWYN RODRIGUES
Citibank
P.O. Box 790017, MS 221
St. Louis, MO 63179
(800) 925-2484



# Home Equity Line of Credit DEED OF TRUST

ACCOUNT NO.: ███████████

In this Deed, "You", "Your" and "Yours" means, **LLOYD H. MOON AND ORDELL E. MOON, Husband and Wife, as Community Property with Right of Survivorship** , of **1905 BRISTOL ST, PETALUMA, CA  94954**, each person signing as trustor.  "We", "Us" and "Our" means **CITIBANK (WEST), FSB ("beneficiary")**, One Sansome St., San Francisco, CA 94104.  The "Trustee" means Citibank Service Corporation, One Sansome St., San Francisco, CA 94104 or any successor appointed pursuant to Paragraph 26 of this Deed of Trust.  The "Borrower" means the individual(s) who has(ve) signed the Home Equity Line of Credit Agreement and Disclosure (the "Agreement") of even date herewith and in connection with this Deed of Trust.

The "Property" means the real estate, including the leasehold (if any), located at **1905 BRISTOL ST, PETALUMA, CA  94954** and having the legal description attached to and made a part of this Deed of Trust.

THIS MORTGAGE between You, Trustee and Us is made as of the date next to Your first signature below and has a final maturity date 30 years from such date.

The Agreement provides that the credit secured by the Property is an open-end revolving line of credit at a variable rate of interest.  The maximum amount of all loan advances made to the Borrower under the Agreement and which may be secured by this Deed of Trust may not exceed **$300,000.00** (the "Credit Limit").  At any particular time, the outstanding obligation of Borrower to Us under the Agreement may be any sum equal to or less than the Credit Limit plus interest and other charges owing under the Agreement and amounts owing under this Deed of Trust.  Obligations under the Agreement, Deed of Trust and any riders thereto shall not be released even if all indebtedness under the Agreement is paid, unless and until We cause a reconveyance of the Property to be executed to You and such reconveyance is properly recorded.

TO SECURE to Us:  (a) the payment and performance of all indebtedness and obligations of the Borrower under the Agreement or any modification or replacement of the Agreement; (b) the payment of all other sums advanced in accordance herewith to protect the security of this Deed of Trust, with finance charges thereon at the variable rate described in the Agreement; and (c) the payment of any future advances made by Us to Borrower (pursuant to Paragraph 16 of this Deed of Trust (herein "Future Loan Advances")) and, in consideration of the indebtedness herein recited and the trust herein created, You hereby irrevocably grant and convey to Trustee, in trust, with, if allowed by applicable law, power of sale, the Property.

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to You to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights and water stock, and all fixtures now or hereafter attached to the Property (which, if this Deed of Trust is on a unit in a condominium project or planned unit development, shall include the common elements in such project or development associated with such unit), all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property.

---

CFX-H-SI-703-CA                                1 of 6                              Revised 06/24/2005
MOON                                                                   ACAPS ████████

**Deed of Trust, continued**                 **citibank®**

IN WITNESS WHEREOF, YOU HAVE EXECUTED THIS DEED OF TRUST, AND AGREE TO BE BOUND BY ALL TERMS AND CONDITIONS STATED ON PAGES 2 THROUGH 6 FOLLOWING.

_Lloyd H Moon_ 08/25/2005      _Ordell E Moon_ 08/25/2005
Trustor: **LLOYD H. MOON**          Trustor: **ORDELL E. MOON**
[ ] **Married**      [ ] **Unmarried**     [ ] **Married**      [ ] **Unmarried**

Trustor:                        Trustor:
[ ] **Married**      [ ] **Unmarried**     [ ] **Married**      [ ] **Unmarried**

[ ] **Married**      [ ] **Unmarried**     [ ] **Married**      [ ] **Unmarried**

STATE OF CALIFORNIA
COUNTY OF _SONOMA_

On 08/25/2005, before me, _CLIVE K. PRASAD._
personally appeared **LLOYD H. MOON and ORDELL E. MOON** personally known to me or proved to me on the basis of satisfactory evidence to be the same person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that ~~he/she/they~~ executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
(Signature of Person Taking Acknowledgment)

CLIVE K. PRASAD
COMM. # 1366967
NOTARY PUBLIC   CALIFORNIA
SONOMA COUNTY
My Comm. Expires July 28, 2006

_CLIVE K. PRASAD_
(Signature of Person Taking Acknowledgment Typed, Printed or Stamped)

You covenant that You are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant, and convey the Property, and that the Property is unencumbered, except for the encumbrances of record and any first deed of trust. You covenant that You warrant and will defend generally the title to the Property against all claims and demands, except those disclosed in writing to Us as of the date of this Deed of Trust.

You and We covenant and agree as follows:

1. **Payment of Indebtedness.** Borrower shall promptly pay when due the indebtedness secured by this Deed of Trust including, without limitation, that evidenced by the Agreement.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Us under the Agreement will be applied to the principal balance and any finance charges, late charges, collection costs, and other charges owing with respect to the indebtedness secured by this Deed of Trust in such order as We may choose from time to time.

3. **Charges; Liens.** Except as expressly provided in this Paragraph 3, You shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any, by Your making payments, when due, directly to the payee thereof. In the event You make payments directly to the payee thereof, upon Our request You shall promptly furnish to Us receipts evidencing such payment.

CFX-H-SI-703-CA                2 of 6                  Revised 06/24/2005
MOON                                     ACAPS █



## Deed of Trust, continued

You shall make payments, when due, on any indebtedness secured by a deed of trust or other lien that is prior in right time to this Deed of Trust (a "Prior Deed of Trust"). You shall promptly discharge the lien of any Prior Deed of Trust not disclosed to Us in writing at the time of application for the Agreement, provided, however, that You shall not be required to discharge any such lien so long as You shall (a) in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof, or (b) secure from the holder of such prior lien an agreement in form and substance satisfactory to Us subordinating such lien to the Deed of Trust. You shall not enter into any agreement with the holder of a Prior Deed of Trust whereby such Prior Deed of Trust, or the indebtedness secured thereby is modified, amended, extended or renewed, without Our prior written consent. You shall neither request nor allow any future advances to be secured by a Prior Deed of Trust without Our prior written consent.

4. **Hazard Insurance.** You shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as We may require (including flood insurance coverage, if required by Us) and in such amounts and for such periods as We may require. Unless We require in writing otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy. All insurance policies and renewals thereof shall be in form and substance and with carriers acceptable to Us and shall include a standard mortgage clause in favor of and in form and substance satisfactory to Us. In the event of loss, You shall give prompt notice to the insurance carrier and Us. We may make proof of loss if not made promptly by You.

If the Property is abandoned by You, or if You fail to respond to Us within thirty (30) days from the date the notice is mailed by Us to You that the insurance carrier offers to settle a claim for insurance benefits, We are authorized to collect and apply the insurance proceeds at Our option either to restoration or repair of the Property, or to sums secured by this Deed of Trust.

If the Property is acquired by Us under Paragraph 14 of this Deed of Trust, all of Your right, title and interest in and to any insurance policies, and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition, shall pass to Us to the extent of the sums secured by this Deed of Trust immediately prior to such sale or acquisition.

The provisions of this Paragraph 4 shall be subject to the provisions of Paragraph 5 if this Deed of Trust covers a unit in a condominium project or planned unit development.

5. **Preservation and Maintenance of Property; Condominiums and Planned Unit Developments.** If this Deed of Trust is on a unit in a condominium or a planned unit development (herein "Condominium Project"), then: (a) You shall perform all of Your obligations under the declaration or covenants creating or governing the Condominium Project, the by-laws and regulations of the Condominium Project, and all constituent documents (herein "Project Documents"), including the payment when due of assessments imposed by the homeowners association or other governing body of the Condominium Project (herein "Owner's Association"); (b) You shall be deemed to have satisfied the insurance requirements under Paragraph 4 of this Deed of Trust if the Owners Association maintains in full force and effect a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term "extended coverage" and such other hazards (including flood insurance) as We may require, and in such amounts and for such periods as We may require naming Us as additional loss payee; (c) the provisions of any Project Documents regarding the application of any insurance proceeds from "master" or "blanket" policies covering the Condominium Project shall supersede the provisions of Paragraph 4 of this Deed of Trust to the extent necessary to avoid conflict between the provisions thereof and hereof; (d) You hereby assign to Us the right to receive distributions on account of the Property under "master" or "blanket" policies covering the Condominium Project to the extent not applied to the restoration or repair of the Property, with any such distributions in excess of the amount necessary to satisfy in full the obligations secured by this Deed of Trust being paid to You; (e) You shall give Us prompt written notice of any lapse in any insurance coverage under a "master" or "blanket" policy on the Condominium Project; and (f) You shall not, without Our prior written consent, consent to either (i) the abandonment or termination of the Condominium Project (except for the abandonment or termination provided by law in the case of substantial destruction by fire or other casualty or in the case of a taking or condemnation or eminent domain), (ii) any material amendment to the Project Documents (including any change in the percentage interests of the unit owners in the Condominium Project), or (iii) the effectuation of any decision by the Owners Association to terminate professional management and assume self-management of the Condominium Project. If the Property has rental units, You shall maintain insurance against net loss in addition to the other hazards for which insurance is required herein.

6. **Protection of Our Security.** If You fail to perform Your obligations under this Deed of Trust, or if any action or proceedings adversely affects Our interest in the Property, We may, at Our option, take any action reasonably necessary (including, without limitation, paying expenses and attorney fees and to have entry upon the Property to make repairs) to perform Your obligations or to protect Our interests. Any amounts disbursed by Us pursuant to this Paragraph 6, with interest thereon at the variable rate described in the Agreement, shall become indebtedness secured by this Deed of Trust (except as expressly provided herein). Nothing contained in this Paragraph 6 shall require Us to incur any expense or take any action hereunder.

**Deed of Trust, continued**                                   citibank®

7.  **Inspection.**  We or Our agents may enter and inspect the Property, after giving You reasonable prior notice.

8.  **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Us. Neither Borrower nor You will be relieved of any obligation to make payments if We apply the award received to the outstanding balance owed.

If You abandon the Property, or if, after notice by Us to You that the condemnor offers to make an award or settle a claim for damages, You fail to respond to Us within thirty (30) days after the date such notice is mailed, We are authorized to collect and apply the proceeds in the same manner as provided in Paragraph 4 hereof.

9.  **Forbearance not a Waiver.**  Any forbearance by Us in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy in the future.  Any waiver by Us must be in writing and signed by Us.

10.  **Successors and Assigns Bound; Joint and Several Liability; Captions.**  The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, Your and Our respective successors and assigns, subject to the provisions of Paragraph 13 hereof.  All Your covenants and agreements shall be joint and several.  The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.  Any Trustor who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Trustor's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Trustor hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Trustor's consent and without releasing that Trustor or modifying this Deed of Trust as to that Trustor's interest in the Property.

11.  **Notices.**  Except for any notice required under applicable law to be given in another manner, (a) any notice to You provided for in this Deed of Trust shall be given by personal delivery or by mailing such notice by first-class postage paid, addressed to You at the address of the Property shown at the beginning of the Deed of Trust or at such other address as You may designate by notice to Us as provided herein, and (b) any notice to Us shall be given by personal delivery or by mailing such notice by certified mail, return receipt requested, to Our address stated herein or to such other address as We may designate by notice to You as provided herein.

12.  **Severability.**  If any term of this Deed of Trust is found to be unenforceable, all other provisions will remain in full force.

13.  **Due on Transfer Provision - Transfer of the Property.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Our prior written consent, We may, at Our option, require immediate payment in full of all sums secured by this Deed of Trust.  However, We shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Deed of Trust.  If We exercise this option, We shall give You notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Deed of Trust must be paid.  If these sums are not paid prior to the expiration of this period, We may invoke any remedies permitted by this Deed of Trust without further notice or demand on You.

14.  **Default.**  If You breach any term in this Deed of Trust, or if Borrower fails to perform any obligation under the Agreement, We may, at Our option, declare all sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale under this Deed of Trust and any other remedies permitted by law.  We may collect from You all reasonable costs incurred in enforcing the terms of this Deed of Trust, including attorney's fees and allocated costs of Our salaried employees.

15.  **Assignment of Rents.**  As additional security hereunder, You hereby assign to Us the rents of the Property; provided, however, that You shall have, prior to acceleration under Paragraph 14 hereof or abandonment of the Property, the right to collect and retain such rents as they become due and payable.

16.  **Future Loan Advances.**  Upon Your request, We at Our option may make Future Loan Advances to You or Borrower.  Such Future Loan Advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by a promissory note or agreement stating that said note or agreement is so secured.

17.  **Release.**  Upon payment of all sums secured by this Deed of Trust and upon (a) expiration of the Agreement or (b) Your request, We shall release this Deed of Trust and You shall pay all costs of recordation, if any.

CFX-H-SI-703-CA                    4 of 6                    Revised 06/24/2005
MOON                                                          ACAPS



## Deed of Trust, continued

18. **Appointment of Receiver; Lender in Possession.** Upon acceleration under this Deed of Trust or abandonment of the Property, We shall be entitled to have a receiver appointed by a court to enter upon, take possession of, and manage the Property and collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including but not limited to, receiver's fees and premiums on the receiver's bonds and reasonable attorneys' fees and then to the sums secured by this Deed of Trust. The receiver shall be liable to account only for those rents actually received.

19. **Statement of Obligation.** We may collect a fee for furnishing a statement of obligation in an amount not to exceed the maximum amount permitted under applicable law.

20. **No Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for Our benefit in any capacity, without Our prior written consent.

21. **Fixture Filing.** This Deed of Trust constitutes a financing statement filed as a fixture filing in the Official Records of the County Recorder of the county in which the Property is located with respect to any and all fixtures included within the term "Property" as used in this Deed of Trust and with respect to any goods or other personal property that may now or hereafter become such fixtures.

22. **Third Party Waivers.** In the event that any of You has not also signed the Agreement as Borrower, each of You: (a) agrees that We may, from time to time, without notice to, consent from or demand on You, and without affecting or impairing in any way any of Our rights or Your obligations, (i) renew, extend, accelerate, compromise or change the interest rate or other terms of the Agreement and any promissory note or agreement evidencing a Future Loan Advance, and (ii) accept, waive and release other security (including guarantees) for the obligations arising under the Agreement or any promissory note or agreement evidencing a Future Loan Advance, and (b) waives (i) any right to require Us to proceed against any Borrower or any other person, proceed against or exhaust any security for the obligations secured by this Deed of Trust or pursue any other remedy in Our power whatsoever, (ii) any defense or right against Us arising out of any disability or other defense or cessation of liability of any Borrower for any reason other than full payment, (iii) any defense or right against Us arising out of Our foreclosure upon the Property, even though such foreclosure results in the loss of any right of subrogation, reimbursement or other right You have against any Borrower, (iv) all presentments, diligence, protests, demands and notice of protest, dishonor, and nonperformance, (v) until payment in full of the indebtedness secured by this Deed of Trust, any right of subrogation or the benefit of any security for such indebtedness, and (vi) the benefit of the statute of limitations affecting the Property to the extent permitted by law. Any partial payment by Borrower or other circumstance that operates to toll any statute of limitations as to such person shall operate to toll such statute as to You.

23. **Choice of Law.** The Deed of Trust will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of California; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Deed of Trust will be governed by the law of the state where the Property is located.

24. **Your Copy.** You shall be given one conformed copy of the Agreement and this Deed of Trust.

25. **Loan Charges Legislation Affecting Our Rights.** If the Agreement is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Agreement exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any such loan charge already collected from You or Borrower which exceeded permitted limits will be refunded to You or Borrower; We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to You or Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge due. If enactment or expiration of applicable laws has the effect of rendering any provision of the Agreement or this Deed of Trust unenforceable according to its terms, We may at Our option, require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted by Paragraph 14.

26. **Substitute Trustee.** We may, at our Option, from time to time remove the Trustee and appoint a successor Trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor Trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

27. **Reconveyance.** After compliance with all requirements of the Agreement, We shall request the Trustee to reconvey the Property to You. Trustee shall reconvey the Property without warranty. You shall pay any fee legally charged by the Trustee for the issuance of reconveyance and all costs of recordation.

---

CFX-H-SI-703-CA                 5 of 6                             Revised 06/24/2005
MOON
                                                      ACAPS: ▮▮▮▮▮▮▮



**Deed of Trust, continued**

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR DEED OF TRUST OR MORTGAGE

We and You request the holder of any encumbrance with a lien which has priority over this Deed of Trust give notice to Us, at Our address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the Agreement secured by this Deed of Trust.  The Agreement together with all other indebtedness and obligations secured by this Deed of Trust have been paid and performed in full.  Trustee is hereby directed to cancel the Agreement and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all estate now held by Trustee to the persons legally entitled thereto.

Date: _____          _____

CFX-H-SI-703-CA                                    6 of 6                                 Revised 06/24/2005
MOON                                                                              ACAPS:████████

Legal Description::

The land referred to is situated in the State of California, County of Sonoma, City of Petaluma, and is described as follows:

Lot 29, as shown on that certain map entitled "Amended Final Map for Mountain Valley Phase No. 1-B", filed in the Office of the County Recorder of Sonoma County, State of California on December 11, 1992 in Book 504 of Maps, at Pages 1 through 7, Sonoma County Records.

Tax ID █████████

Case 23-10092   Doc# 61-1   Filed 06/27/23   Entered 06/27/23 14:20:39   Page 51 of 52

# ILLEGIBLE NOTARY SEAL DECLARATION

## (GOVERNMENT CODE 27361.7)

I declare under penalty of perjury that the notary seal on the document
to which this statement is attached, reads as follows:

NAME OF NOTARY PUBLIC: _Clive K. Prasad_

COMMISSION NUMBER: _1366967_

NOTARY PUBLIC STATE: _CA_

COUNTY: _Sonoma_

MY COMM. EXPIRES: _July 28_
(DATE)

SIGNATURE OF DECLARANT: _Robin Cox_

PRINT NAME OF DECLARANT: **ROBIN COX**

CITY & STATE OF EXECUTION: _Petaluma, CA_

DATE SIGNED: _8-30-05_

**THE ABOVE INFORMATION MUST BE LEGIBLE FOR SCANNING**

Case 23-10092   Doc 61-1   Filed 06/27/23   Entered 06/27/23 14:20:35   Page 52 of 52